# Wytheville.

GOLD, RECEIVER, v. PAYNTER.

July 2, 1903.

1. LIMITATION OF ACTIONS—*Calls on Stock—Action by Company or Creditor—Acts 1897-'8, Page 16.*—As between a company and its stockholders the statute of limitations begins to run from the time the calls become due and payable pursuant to the company's call, and in this State, in consequence of an Act of Assembly approved December 22, 1897 (Acts 1897-'8, page 16), the same rule applies as between creditors of the company and stockholders. The object of the statute was to permit the statute of limitations and most other defences to be set up against a receiver, or other representative of creditors, in like manner as if the company itself were plaintiff. Even if the statute did not apply, the question being doubtful, this court would adopt that view of the situation which accords with the rule established by the Legislature on the subject. In the case at bar no new call was made by the court, but the call previously made by the company was adopted.

2. CORPORATIONS—*Assignee of Stock—Nature of Contract—Limitation of Action.*—An assignee of stock is bound by an implied contract to pay unpaid installments. He is not bound by the contract of his assignor with the company, but by his own contract and the statutes which declare the extent of his liability. If his contract is not in writing, the limitation is three years from the time the right to bring action thereon first accrues.

3. LIMITATION OF ACTIONS—*Suspension—Time to Be Computed.*—The mere filing of a petition to rehear a decree does not suspend its operation, and an injunction against a receiver to prevent him from prosecuting an action against one stockholder does not stop the running of the statute of limitations against another stockholder. Counting these periods, but deducting the time mentioned in section 2 of the Act of December 22, 1897, and the time during which the decree directing this action was superseded by an order of this

· court, more than three years elapsed after the right to bring this action accrued, and before it was actually brought.

Error to a judgment of the Circuit Court of Roanoke county, rendered April 3, 1903, on a motion for a judgment for money wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Marshall McCormick* and *Barton & Boyd*, for the plaintiff in error.

*A. A. Phlegar* and *A. B. Pugh*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error instituted this proceeding by motion against the defendant to recover a judgment for an assessment against him as a stockholder in the Berryville Land & Improvement Company. The defendant filed two pleas of the statute of limitations: One that the cause of action accrued more than three years, and the other that it accrued more than five years, before the proceeding was commenced. To these pleas the plaintiff filed special replications, in which he set out the proceedings had in a creditors' suit brought by George A. Ricamore against the Berryville Land & Improvement Company, in which the plaintiff had been appointed receiver of the court and directed to collect the assessment sued for.

A brief statement of the proceedings had in that cause will be found in the opinion of the court in *Shickel* v. *The Berryville Land & Improvement Co.*, 99 Va. 88, 37 S. E. 813.

The defendant demurred to the replication, his demurrer was sustained, and judgment rendered in his favor. To that judgment this writ was awarded.

The first question to be determined is when the statute of limitations commenced to run.

The plaintiff's contention is that the demand sued for was the amount of an assessment made by the court in the creditors' suit, and that the statute did not commence to run until it was payable under the decree of the court. The defendant, on the contrary, insists that it was an assessment upon his stock made by the directors of the company on June 10, 1891, and which became payable on the 20th of that month, and that the statute commenced to run from the last-mentioned date.

It appears from the proceedings had in the creditors' suit that a report was made which set forth the several amounts alleged to be due from the various stockholders upon calls made by the land company whilst it was a going concern. That report was confirmed by the decree of January 8, 1898, in which it was declared:

"(6) That the assessments of 40 *per cent.* on the stock of the Berryville Land & Improvement Company heretofore made by said company to discharge its indebtedness be, and the same are hereby, ratified.

"(7) That the court adopts as its own the calls or assessments of 40 *per cent.* heretofore made by said Berryville Land & Improvement Company on its stockholders, and does hereby make said assessments of 40 *per cent.* on all of said stockholders.

"(8) That all of the said stockholders, or their assignees, within thirty days from the rising of this court, shall pay to the receiver of the court in this cause the following amounts, namely: . . . 'F. V. N. Paynter (defendant in error) the sum of $680.81, with interest on $500.00, part thereof from Jan. 1st, 1897.' . . . However, should said stockholders not pay said amounts due by them, no execution is to be issued against them under this decree.

"(9) Should said stockholders refuse or fail to pay said amount due by them respectively as aforesaid within said thirty days, the said receiver is instructed to institute suits at law against said stockholders or their assignees who may be delin-

quent, and who are reported to be solvent in said Commissioner Ward's report, and said receiver is authorized to collect from said stockholders, who are reported insolvent in said report, by compromise or otherwise, subject to the approval of the court, but said receiver is instructed not to institute any suit against delinquent stockholders who are reported insolvent in said report without the further order of the court."

The court made no new or additional assessment upon the stockholders. None was necessary if the balances due from the stockholders on the calls made by the company could be collected. The only effect of the court's decree was to direct the stockholders to pay the sums ascertained to be due from them to the receiver of the court, and, if they, or any of them, failed to pay within the thirty days named, then, against such as were solvent and in default, the receiver was directed to institute actions at law.

The general rule is that the statute of limitations begins to run from the time when each assessment becomes payable, and this follows necessarily from the language of section 2920 of the Code of 1887, which provides that the action shall be brought within the designated number of years "next after the right to bring the same shall have first accrued." Minor's Inst., p. 580; Wood on Limitations, secs. 149, 150; 1 Cook on Stockholders (3d Ed.) 195.

As between the company and its stockholders, there can be no question that the statute commenced to run from the time when the several assessments which made up the amount due from each stockholder became due and payable under the calls made by the company. Code 1887, sec. 1127; 1 Minor's Inst. 580.

But it is insisted that, whilst this is true as between the corporation and its stockholders, it is not the rule as between the creditors and the stockholders.

The authorities are in conflict upon this question, some of

them holding that the creditors of the corporation will be
barred by the statutes from proceeding against the stockholders
for unpaid subscriptions whenever the company itself would be
barred; others holding that as long as any part of the capital
stock of a corporation remains unpaid in a stockholder's hands
he is a trustee for the corporate creditors until their claims are
satisfied, and that the statute of limitations does not run as to
the creditors except from the time of the dissolution of the cor-
poration, or from the time the creditors claim becomes due and
payable or a judgment thereon has been recovered, or a call has
been made by the court in a creditors' suit.    See 2 Thompson
on Corporations, secs. 2003-2009; 3 Thomp. Corp., sec. 3779;
1 Cook on Stockholders, sec. 195; Beach on Private Corpora-
tions; note to *Thompson v. Reno Savings Bank*, 3 Am. St. Rep.
827-829, and cases cited; *Scovill* v. *Thayer*, 105 U. S. 143, 26
L. Ed. 968; *Glenn, Trustee*, v. *Marbury*, 145 U. S. 499, 12 Sup.
Ct. 914, 36 L. Ed. 790; *Swearinger* v. *Dairy Co.*, 198 Pa. 68,
75, 47 Atl. 941, 53 L. R. A. 471; *Glenn, Trustee*, v. *Williams*,
60 Md. 93; Lane's Appeal, 105 Pa. 69, 70, 51 Am. Rep. 166;
*Glenn* v. *Semple*, 80 Ala. 159, 60 Am. Rep. 92; *Stilphen* v.
*Ware*, 45 Cal. 110; *South Carolina Manfg. Co.* v. *The Bank*,
*&c.*, 6 Rich. Eq. 227, 234, 235; *First Natl. Bank* v. *Greene*, 64
Iowa, 445, 17 N. W. 86, 20 N. W. 754; *Thompson* v. *Reno
Savings Bank* (Nev.), 7 Pac. 870, 3 Am. St. Rep. 881; *Chris-
tensen* v. *Quintard*, 36 Hun. 334.

We have no decision upon this precise question, though the
opinion in *Lewis' Adm'r* v. *Glenn, Trustee*, 84 Va. 947, 967,
968, 6 S. E. 866, seems to indicate that the court thought the
statute would run upon an assessment from the time it became
due and payable, whether made by the company or by the court.

After the creditors' suit in *Ricamore* v. *The Land Company*
was brought, and before the decree was entered directing the
receiver to collect the assessment sued for, the Legislature pro-
vided, by an Act approved December 22, 1897 (Acts 1897-'98,

pp. 16, 17, c. 20, sec. 2), that in all cases where it is necessary to resort to a court of equity for the purpose of settling and winding up the affairs of insolvent corporations, or to make assessments on unpaid stock subscriptions, the court shall direct the receiver or other representative of the creditors to sue at law when necessary to recover such call or assessment, and that such actions shall be governed in all respects by the provisions of that act; and that "all pleas, defences, and evidence which would be admissible if the company were solvent shall be equally admissible and shall have the same force and effect in law in any action brought after the insolvency of such company, except where the defence relied upon is an agreement on the part of the corporation not to assess the face value of the stock subscribed, and such agreement was unknown to the creditor at the date of his contract."

The object of that statute, as we construe it, was to enable a stockholder sued by a receiver of the court, or other representative of the creditors, under the provisions of that act, to make the same defences, including the plea of the statute of limitations, to such action, as if the corporation itself were the plaintiff suing for the demand, except that he cannot set up as a defence an agreement on the part of the company not to assess the face value of the stock subscribed, and when such agreement was unknown to the creditor at the date of his contract.

The question under consideration being an open one in this State when that act was passed, this court, even if the act did not apply to this case, ought to adopt that view of the question which is in accord with the rule established by the Legislature upon the subject, and hold that the statute of limitations commenced to run upon the assessment sued for when it became due and payable under the company's call.

The next question is whether the three or five years' statute of limitations applies to the plaintiff's demand.

The replication avers that the defendant acquired his stock

in the land company by transfer from D. B. Strouse, who subscribed for the same and other shares, in writing, not under seal, and that the certificates for the shares of stock held by the defendant were issued to him by the land company, on the written order of Strouse, before any assessment was made thereon, and that no certificate therefor was issued to Strouse.

It is not averred that the defendant entered into any contract in writing to pay the assessments made on the stock transferred to him by Strouse, and for which a certificate was issued him by the company.

Section 1130 of the Code of 1887 provides that "on assignment the assignee and assignor shall be severally liable for any installments which have accrued or which may thereafter accrue, and may be proceeded against in the manner before provided." The original subscriber at common law is liable for all installments of, or assessments on, his stock subscription, agreeably to his contract, implied from his accepting and holding the certificate of stock, even though it be not express. "And so," says Professor Minor, "where the assignee of the stock has come into privity with the company by having stock transferred to him on the company's books, a promise to pay the remaining installments is as much implied against him as it was against his assignor, and he is liable accordingly." 1 Min. Inst. 585. He is not bound by the contract which his assignor made with the company, but by his own contract and the statutes, which declare the extent of his liability. If his contract be not in writing, it comes within that class of contracts which section 2920 of the Code of 1887 declares must be sued on within three years next after the right to bring the same shall have first accrued. This was so held in the case of *Liberty Savings Bank v. Otter View Land Co.*, 96 Va. 352, 31 S. E. 511, in an action against an original holder of stock, and must be equally true in an action against his assignee who is sued upon a contract not in writing. The cause of action against the defendant first ac-

crued on the 20th day of June, 1891, the day when the fourth call made by the company became due and payable. The statute ran from that time until March 11, 1893, at least, when the creditors' suit was instituted against the land company, though the stockholders were not made parties to it until some time afterwards. Section 2 of an act approved December 22, 1897, *supra*, provides that where chancery suits are pending at the time of the passage of that act, in which it is sought to recover unpaid stock subscriptions, the statute of limitations shall not run, as to any alleged subscription, during the time which shall have elapsed between the institution of such suit and one month after an order shall have been entered authorizing a common-law action, as provided for by that act, for the recovery of such subscription. The order or decree in the creditors' suit directing actions at law to be brought was entered January 8, 1898, but it gave the stockholders thirty days in which to pay, so that actions at law could not be instituted until after that time had elapsed. By the terms of that decree it was suspended for 120 days upon the execution of the usual suspending bond.

On January 3, 1899, Reed and McCormick, stockholders decreed against, filed a petition for a rehearing of that decree, accompanied by a prayer for an injunction restraining the receiver from prosecuting his action at law instituted against them under the decree of the court. The injunction was granted on that day. Later, a similar petition was filed by T. J. Shickel, another stockholder. It is insisted that the filing of these petitions which sought to review and set aside the decree of January 8, 1898, went to the merits of the whole case, and the injunction granted, restraining the receiver in prosecuting his action at law against Reed and McCormick, suspended the receiver's powers under the decree of January 8, 1898, and stopped the running of the statute of limitations.

The mere filing of a petition to rehear the decree did not sus-

pend its operation, and enjoining the receiver from prosecuting his action against Reed and McCormick did not prevent him from instituting actions against the other stockholders as directed by the decree.

On May 9, 1899, the court passed upon the petitions to rehear, modified the decree of January 8, 1898, by rejecting a debt which had been allowed, denied further relief, dissolved the injunction, and dismissed the petitions. Subsequently, Reed and McCormick and Shickel obtained an appeal and supersedeas to this court from the decree of May 9, 1899, and the former decrees in the creditors' suit, and on the 7th day of February, 1900, the supersedeas bond was given, and the decree of January 8, 1898, suspended. On the 17th of January, 1901, the decrees appealed from were affirmed by this court. On the 9th day of June, 1901, the proceeding in this case was instituted.

The statute of limitations was running, according to the view we take of the case, from June 20, 1891, to March 11, 1893; from July 8, 1898, to February 7, 1900; and from January 17, 1901, to June 8, 1901—aggregating more than three years before this proceeding was instituted.

We are of opinion, therefore, that there is no error in the judgment complained of, and that it should be affirmed.

KEITH, P.:

I cannot concur in the opinion of the court.

The contention of the plaintiff in error that the statute of limitations did not begin to run until the assessment was payable under the decree of the court, in my judgment, is right, and should prevail, and that, as a consequence, three years have not elapsed before the institution of this suit.

*Affirmed.*