LEIGHTON WILLIAMS, as Receiver, etc., Appellant, *v*. HENRY A. TAYLOR et al., as Administrators, etc., Respondents.

Certain paid-up stock of a corporation in the hands of its stockholders, was placed by them in the hands of a trustee for sale. M., defendants' intestate subscribed for a portion of this stock, agreeing to pay therefor in accordance with the terms of the proposition under which subscriptions were invited. By these terms one-third of the price was to be paid down as soon as the stock was subscribed for, and the balance in installments when called for by the board of trustees for the purposes of the business. In an action upon the subscription, more than six years after the payment down was made, but within six years after the first call, *held*, that it was not contemplated by the contract that the whole subscription price should be paid at once; that, assuming that the call contemplated would be satisfied by a simple demand, the right to make actual demand was only complete when the exigencies of the business required it, and the trustee had no right to call for all at once, unless it was so required; that in the absence of proof to the contrary, it was to be presumed that the calls were made in accordance with the contract as thus construed, and so, no part of the balance was due until a call was made; that, therefore, the Statute of Limitations was not a bar, and a dismissal of the complaint was error.

*L. O. A. & N. Y. R. R. Co.* v. *Mason* (16 N. Y. 451); *Howland* v. *Edmonds* (24 id. 307); *Tuckerman* v. *Brown* (33 id. 297), distinguished.

*Williams* v. *Meyer* (41 Hun, 545), reversed.

(Argued March 20, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 15, 1886, which affirmed a judgment in favor of defendants entered upon an order of the court dismissing the complaint on trial at circuit.

This action was brought by the Blair Iron and Steel Company to recover from one Christopher Meyer, since deceased, a balance alleged to be due from him upon a subscription for the purchase of 600 shares of paid-up stock of said company.

While the action was pending a receiver of the corporation was appointed and substituted in its place, as plaintiff, and Mr. Meyer having died, his administrators were substituted as defendants.

Between January 20, and May 15, 1873, the defendants' intestate signed an instrument of which the following is a copy viz. :

" Agreement.

"New York, *January* 20, 1873.

" The capital stock of the Blair Iron and Steel Company is 25,000 shares of $100 each — $2,500,000. This capital has been paid up by the transfer of the patents for the Blair process and the works at Glenwood, Twenty-third ward of Pittsburgh, Pa., to the company (the deed for the Glenwood property to be made as soon as empowering act can be obtained from the Pennsylvania legislature, which we have bound ourselves to procure), and the whole stock of said company issued to us in payment therefor.

" We have agreed to place in the hands of General A. S. Diven, as trustee, 9,000 shares of this stock, to be used as working capital for the company, subject to the order of the board of trustees of said company, excepting $50,000 of the proceeds thereof, first to be paid to us by said trustees.

" The trustees of the company have, with our consent, ordered the sale of 6,000 of said shares for the purpose of raising a present working capital and paying said $50,000, the minimum price to be $50 per share. And said trustee, with the approbation of the board of trustees, now offers said 6,000 shares at said minimum price of $50 per share, to be paid for as follows, viz.: One-third part thereof as soon as the whole 6,000 shares shall be subscribed for, and the remainder in such installments as the board of trustees may call for the same, for the purposes of the business, the certificates to be delivered when the whole shall be paid.

" THOMAS S. BLAIR,
" T. STRUTHERS,
" MORRISON FOSTER,
"By his attorney, T. Struthers.

" We, the undersigned, hereby subscribe to the number of shares of the above 6,000 shares set opposite to our names,

respectively, to be paid for according to the terms above set forth; but this subscription not to be binding until the whole 6,000 shares shall have been reliably subscribed."

The subscription of Mr. Meyer was for 600 shares. By May 15, 1873, the whole number of shares required was subscribed, and subsequently, by order of the board of trustees, the following calls were made upon the subscribers for the payment of their subscriptions:

May 15, 1873, a call for thirty-three and one-third per cent.
October 15, 1873, a call for ten per cent.
February 18, 1874, a call for ten per cent.
April 10, 1874, a call for twenty-one and two-thirds per cent.
June 1, 1874, a call for twenty-five per cent.
Due notice of these calls was given to all of the subscribers.

Mr. Meyer paid $10,000, the amount required upon the completion of the subscription, but made no further payment, and this action was commenced October 14, 1879, to recover the balance alleged to be due from him. Among other defenses, he pleaded in his answer that said cause of action accrued more than six years before suit was commenced thereon, and upon this ground the complaint was dismissed at the circuit.

*James Watson* for appellant. The subscription agreement was conditional and created a condition precedent, a call or demand by the trustees based upon the requirements of the business of the company. (*Glenn* v. *Williams*, 60 Md. 93; *Savage* v. *Aldren*, 2 Stark. 232; *Fenton* v. *Emblees*, 1 W. Bl. 353; Wood on Lim. of Act. "Conditions Precedent.") The assumption that the entire amount of the subscriptions became due and payable as soon as the whole number of shares had been subscribed, is contradicted by the very language of the agreement, which fixes that time for the payment of only one-third. The trustees had no right to call until the business purposes of the company required more money, and then only to the extent of the necessity. (*Howland* v. *Edmonds*, 24

N. Y. 309; *Sinkler* v. *T. Co.*, 3 Penn. & Watts, 149; *P. & C. R. R. Co.* v. *Byers*, 32 Penn. St. 22; *Glenn* v. *Williams*, 60 Md. 93; 1 Am. & Eng. Corp. Cas. 58; *Glenn* v. *Sexton*, 10 id. 297, 303.) The statute runs only from the time of the calls. (Wood on Lim.; Thompson on Liability of Stockholders; *Scovil* v. *Thayer*, 105 U. S. 143.)

*William H. Williams* for respondents. This action not having been commenced within six years after the cause of action accrued, to wit, within six years from May 15, 1873, is barred by the Statute of Limitations. (Code Civ. Pro. §§ 380, 382, 415; *G. T. Co.* v. *Hurtin*, 9 Johns., 217; *L. O., A. & N. Y. R. R. Co.* v. *Mason*, 16 N. Y. 451; *White* v. *Haight*, Id. 310; *Howland* v. *Edmunds*, 24 id. 307; *Tuckerman* v. *Brown*, 33 id. 297; *White* v. *Smith*, 77 Ill. 351; *W. C. M. Ins. Co.* v. *Miller*, 26 V. R. 77; *Amy* v. *Dubuque*, 98 U. S. 470; *Commonwealth* v. *C. Bank*, 5 Allen, 42.) The statute itself, under which said company was organized, provides that the board of trustees has the exclusive right to manage the affairs of the corporation. (Laws of 1848, chap. 40, §§ 3, 6.) It is for the trustees of a corporation to determine whether its business and necessities demand that subscriptions to its stock should be called in, and that their determination is not to be questioned. Policy and reason alike forbid that stockholders should be allowed to dispute the necessity of assessments upon their stock, to the hazard of the business and of the rights of creditors. (*Hoyt* v. *Thompson*, 19 N. Y. 207; *People* v. *M. E. R. R. Co.*, 26 Hun, 82; *E. N. Y. R. R. Co.* v. *Lighthall*, 5 Abb. [N. S.] 458; *Judah* v. *A. L. S. Ins. Co.*, 4 Porter, 336; *M. E. R. R. Co.* v. *M. E. R. R. Co.*, 11 Daly, 475.) Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, which in this case was May 15, 1873, and more than six years before the action was commenced. (Code Civ. Pro. § 410; *Dickinson* v. *Mayor*, 92 N. Y. 584.)

VANN, J.   The learned General Term based its affirmance of the judgment rendered at the circuit upon the following cases: *L. O. A. & N. Y. R. R. Co.* v. *Mason* (16 N. Y. 451); *Howland* v. *Edmonds* (24 id. 307), and *Tuckerman* v. *Brown* (33 id. 297).   One of the learned judges, however, in his concurring opinion, said: "To hold that the cause of action accrued before the subsequent payments were required to be made, is not consistent with the agreement between the defendant and the company when he subscribed for the stock;   *   *   *   but the authorities cited in the opinion   *   *   *   sustain the power of the court to disregard the terms on which the parties made the money payable, and to hold the contract to be one for the absolute payment of so much money at once.   They are controlling, although they do violence to the agreement and annul the intention expressed in it."

The same authorities were relied upon by the counsel for the respondent in his argument before us, and in addition thereto he cited the case of *White* v. *Haight* (16 N. Y. 310).

After a careful examination of these cases we recognize them as well decided, but do not think that they are applicable to the case under consideration.

In *L. O., A. & N. Y. R. R. Co.* v. *Mason*, the action was brought to recover the amount of "the defendant's subscription to the plaintiff's articles of asssociation for twenty shares of its capital stock."   The subscription specified "no condition of time of payment," but the act under which the plaintiff was incorporated provided that the directors might "require the subscribers to the capital stock to pay the amount by them respectively subscribed in such manner and in such installments as they may deem proper."   (Laws of 1850, chap. 211, § 7.)   This section further provided for a forfeiture of all previous payments in case of neglect to pay any installment after personal notice to the subscriber requiring him to pay at a time and place named.   The section authorizing subscriptions to be made, however, did not specify when or how they were to be paid.   (Id. § 1.)   The court held (p. 464) that

notice of calls for the payment of subscriptions was necessary only to authorize a forfeiture of the stock, and that section seven was "designed to apply exclusively to proceedings" taken for that purpose; that the obligation to pay and the time and manner of payment must be sought for in the contract itself, and that, as the subscription was to pay generally, it was payable presently, the same as a general promise to pay for goods sold or money loaned.

In *White* v. *Haight*, the defendant had given a note to a mutual fire insurance company, whereby he promised to pay it the sum of $500 "in such portions and at such time or times as the directors of said company may agreeably to their act of incorporation require." The question to be determined as stated by the court (p. 321), was whether, under the act pursuant to which the company was incorporated (Laws of 1849, chap. 308), "the note sought to be recovered is to be considered as payable absolutely, or whether it is to be taken to be a guaranty and only recoverable to the extent of a just proportion of the losses and expenses." It was held that "the note was absolute and payable at all events, without an assess, ment," not because it so provided, but because the statute (§ 5) pursuant to which it was given and to which it referred, so required. The decision was based wholly upon a construction of the statute and not upon the form of the note.

*Howland* v. *Edmunds* involved a note of the same kind, given under the same statute, and it holds that as the note was one required by the charter of the company to make up its capital, the statute fastened upon it the character of an obligation payable on demand or at the mere will of the holder. The court in discussing the subject said: "Where the thing promised is the payment of a sum of money, no actual demand will in general  *  *  *  be necessary, notwithstanding the terms of the contract, but it is, nevertheless, in the power of the parties to so frame their engagements as to make a preliminary demand essential. And so, likewise, though there be nothing in the terms of the instrument to take the case out of the general rule, the attending circumstances and the nature

of the duty may be such that the words which mention a demand or request will have a special significance and will require a preliminary demand to be made." The note upon which *Tuckerman* v. *Brown* was based was the same in origin, form and purpose and in that case it was alleged and proved that an assessment had been made. (303.)

It is obvious that those cases differ essentially from the one now under review. In three of them a statute was part of the contract and controlled the decision of the court (*Savage* v. *Medbury*, 19 N. Y. 32, 33), while in the fourth the promise to pay was general, not "on time, or on call, written or oral."

The agreement that we are called upon to construe was not an ordinary stock subscription, for the stock of the company had all been taken and paid for and was in the hands of the stockholders. For, the purpose of raising money, a part of which was to be used for working capital as it was needed, and a part paid over to themselves, they had placed 9,000 shares of their paid-up stock in the hands of a trustee, subject to the control of the directors who had ordered that a part thereof should be sold. The stockholders thereupon made a proposition to invite subscriptions for the purchase of 6,000 shares, offering it at $50 per share, and specifying the conditions of payment. The terms were that one-third was to be paid down, as soon as all the stock was taken and the remainder was to be paid in such installments as the board of trustees should call for it for the purposes of the business. The subscribers agreed to pay for their stock according to the terms set forth in said proposal, upon which they are presumed to have relied in consenting to purchase.

We think that the parties to this contract did not intend that the entire amount should be paid down, for they agreed that one-third should be paid down. Their intention in this regard would scarcely have been clearer if they had said that one-third only was to be paid down, because the provision that a part was to be paid at once necessarily implied that the remainder was not to be paid at once. By fixing a certain time for the payment of one-third they excluded any obligation to

pay the other two-thirds at the same time.  To hold otherwise
would convict the parties of providing that a portion should
be paid at once and the rest immediately.  The large sum
called for is a circumstance to be considered in this connection,
as bearing upon the probable intention.  Did the parties
intend that $300,000 should become payable the instant
that the contract was binding?  If this was their intention,
would they have said that one-third was to be then paid
and the remainder in such installments as the trustees should
call for it, for the purposes of· the business?  Why should
they make an apparent distinction between the one-third and
the remainder, unless they intended a real distinction?  When
they provided for a call, did they mean that there need not be
any call?  When they agreed that the remainder should be
paid in installments, did they mean that the whole should be
paid at once?  The contract should be so construed as to give
adequate force to all its parts.  Applying this principle, we
think that a condition was annexed to the payment of the
two-thirds that did not attach to the payment of the one-third.
While the latter was payable at a time fixed by the contract,
the former was payable at a time to be fixed by the trustees.
The smaller part was payable at once, but the larger, in
installments.

It is claimed, however, that the trustees had the power to
call for the payment of the entire subscription as soon as the
required amount was subscribed, and hence that under section
410 of the Code of Civil Procedure the Statute of Limitations
began to run on the 15th of May, 1873.  It is provided by
that section that "where a right exists, but a demand is nec-
essary to entitle a person to maintain an action, the time
within which the action must be commenced must be com-
puted from the time when the right to make the demand
is complete," with certain exceptions not here material.
Assuming that the call contemplated by the contract would
be satisfied by a simple demand, when was the right to make
that demand complete?  Had the trustees the right to call
for the entire sum capriciously and arbitrarily, or only as

the purposes of the business required more working capital? The learned General Term held that the expression "for the purposes of the business," as used by the parties in their agreement, had "no significance whatever." Why, then, was it inserted? As the instrument in all other respects is terse, pointed and free from unnecessary verbiage, we do not think that the parties intended that this expression should be without meaning. The language was used by those having stock for sale to induce others to buy, and it holds out ease of payment to solicit subscriptions. They say, in substance, "only one-third of any subscription is payable at once, while the remainder is to be paid in such installments as, for the purposes of the business, the trustees may call for it." Considering the object of the proposal or prospectus, we think that the parties meant that the calls for installments should be made as the purposes of the business required; that the trustees were bound in good faith to determine when the interests of the business required more working capital, and to make their calls accordingly; that they had no right to call for all at once, unless the purposes of the business so required; that in the absence of proof to the contrary, the calls are presumed to have been in accordance with the contract as thus construed; that no part of the balance was due until a call was made and, as the earliest call was within the period of six years prior to the commencement of the action, that the Statute of Limitations is not a defense. It follows that the action of the circuit in dismissing the complaint was erroneous, and that the judgment should be reversed and a new trial granted, with costs to abide event.

All concur, except BRADLEY, J., dissenting, and HAIGHT, J., not sitting.

Judgment reversed.