GLENN *v.* GARTH *et al.*

(*Supreme Court, General Term, First Department.* June 26, 1891.)

CORPORATE STOCK—UNAUTHORIZED TRANSFER TO BROKER—LIABILITY OF TRANSFEREE.
Defendant, a stock-broker in New York city, agreed to carry stock of the N. E. & T. Co. on a margin for one F. The stock was purchased in Baltimore through a broker in that city, and the certificates were sent to defendant as security for the advances made by him for F. The Baltimore broker, instead of delivering the certificates to defendant with a blank assignment and power of attorney to transfer on the books of the corporation, as is the custom in such cases, had the shares transferred in the name of defendant, and sent certificates naming defendant as

the owner of the stock. Defendant testified that in no other instance was stock purchased by him for a customer ever transferred in his name. Defendant repudiated the transfer in his name as soon as he saw the certificates, by notifying F., his customer, to take up the stock, and have it transferred from defendant's name, and by returning the certificates to the Baltimore broker, indorsed in blank, with instructions to sell and have the stock transferred from defendant's name. *Held,* that there was such a disaffirmance of the unauthorized act of the Baltimore broker as relieved defendant from liability as owner of the stock.

Exceptions from circuit court, New York county.

Action by John Glenn, as trustee of and for the benefit of the creditors of the National Express & Transportation Company, against Samuel J. Harrison, David J. Garth, Wellington Goddin, James L. Apperson, Robert A. Lancaster, and Lewis Ginter, formerly partners under the firm name of Harrison, Garth & Co. A verdict was directed for plaintiff, and defendants' exceptions were ordered to be heard at general term in the first instance.

Argued before VAN BRUNT, P. J., and BARRETT, J.

*John Howard* and *Burton N. Harrison,* for plaintiff.    *William W. MacFarland* and *William C. Clopton,* for defendants.

BARRETT, J.   A great many important questions are presented by this appeal, but, in the view which we take of the primary fact, it will not be necessary to consider them. Upon a careful review of all the evidence adduced upon the trial, we are of opinion that the defendants never became stockholders of the corporation represented by the plaintiff, and, consequently, are not responsible for the unpaid assessment sought to be recovered in this action. The shares in question were never purchased by the defendant's firm, (Harrison, Garth & Co.) This firm was engaged in the business of bankers and brokers in stocks, bonds, and securities in this city. They had a customer named Ficklin, who desired to purchase these shares upon a margin. Mr. Garth was the particular member of the firm who dealt with Ficklin. Mr. Garth agreed, as it is termed, to carry these shares for Ficklin—that is, to pay for them as he (Ficklin) purchased them—upon receipt of a sufficient margin to secure the firm against loss. This stock was not listed upon the New York Stock Exchange, and was not dealt in here, but Ficklin told Garth that he could pick the shares up at Baltimore and other places. The company was a Virginia corporation. Some time after the making of this arrangement, several lots of these shares were purchased, doubtless upon the orders of Ficklin, by McKim & Co., brokers, in Baltimore, and, in accordance with Garth's promise to carry these shares, Harrison, Garth & Co. settled McKim & Co.'s account for what they had disbursed in the transaction. The certificates of stock were of course sent on from Baltimore by McKim & Co. to the defendant's firm as their security for the advance thus made to them for Ficklin. The invariable custom, under such circumstances, is for the seller to deliver the certificates to the broker with a blank assignment and power of attorney (to transfer upon the books of the company) indorsed thereon. Such a thing as placing stock in the name of the firm, when thus acting as brokers, had never once occurred in all its business life. To this Mr. Garth explicitly testified as follows: "*Question.* Have you a recollection now of all the various certificates representing stock which came to the firm of Harrison, Garth & Company, bought by that firm. *Answer.* Oh, no; there were millions of dollars' worth. *Q.* Am I correct in understanding you to swear deliberately that this is the only instance of all the stock dealt in by Harrison, Garth & Company in which the certificates were put in the name of the firm, Harrison, Garth & Company? *A.* You distinctly understand me to say that, so far as my recollection is concerned, that was the only instance. *Q.* That is, so far as your recollection is concerned? *A.* Yes, sir; we dealt in stocks, bonds, and gold as other brokers did, and never had them transferred in our name."

Instead of following this custom, and forwarding the ordinary and proper

documents, McKim & Co. had the shares transferred upon the books of the company into the names of Harrison, Garth & Co., and it was the certificates naming this firm as the owners of the shares which were sent on to the defendants. This act of McKim & Co. was wholly unwarranted. It was not only contrary to precedent, but, as matter of fact, was entirely unauthorized. The moment Mr. Garth observed the form of the certificates, he repudiated the transfer to his firm, and did everything in his power to effect a retransfer. He knew that the stock was assessable, and that liability might result from his acceptance of certificates made out in the name of his firm. At the same time he could not prudently return the certificates to the company, and demand their cancellation, for the reason that he had advanced his money upon the security of the shares, and he was not called upon to stand upon Ficklin's single responsibility. He did all that he could do, under the circumstances, to disaffirm the act of McKim & Co. He notified Ficklin, and required him to take the stock up, and have it transferred from the firm's name. He also returned the certificates to McKim & Co., indorsed in blank, with instructions to sell the shares, and have them transferred from the names of the firm. This was, in fact, the only way to get the shares out of the firm's name, and at the same time secure their advances. There was no delay or hesitation. The disaffirmance followed at once upon notice of the unauthorized act. Whether or not McKim & Co. obeyed the defendants' orders is immaterial. The unauthorized act proceeded from McKim & Co. · It was only necessary for the defendants to repudiate that act. They did so in the only practical way which the circumstances permitted. McKim & Co. had transferred the shares to them without right. They at once returned to McKim & Co. the evidence of such unauthorized transfer, with a retransfer in blank. What more could be done? Nothing that we can see. In our judgment, the retransfer in blank operated in accordance with the defendants' intention, and their disaffirmance of the unlawful transfer was effectuated thereby. An attempt was made upon the trial to prove that Harrison, Garth & Co. dealt directly with McKim & Co.; but the testimony adduced by the plaintiff was quite insufficient to raise a genuine conflict on that head. It is true that the book produced by McKim (and there was but one such book produced) specified Harrison, Garth & Co. as the persons for whose account they made the purchases; but this was entirely consistent with the actual facts as stated by Mr. Garth. If Ficklin had ordered the purchases, and directed the stock to be sent to Harrison, Garth & Co., (to be paid for and carried on his account,) the entry would properly have been made as it was. Mr. McKim testified that the orders to purchase and sell the shares were given to his firm "verbally, either by Mr. Harrison or Mr. Garth." This testimony is for several reasons (entirely consistent with respect for Mr. McKim) quite unreliable. The very fact that he thus speaks in the alternative is conclusive of his inability to recall the particular individual who gave the orders. It will be observed that he speaks of what happened over 20 years ago, and that he failed to produce a letter or paper or book (except the single book to which we have referred) in corroboration of his statement. Then, too, the fact stated was highly improbable. He acknowledged that he knew but little of the defendant's firm. He was asked this question: "Did you know the firm of Harrison, Garth & Co., of New York, in the year 1866, and had your firm any transactions with them, and what was the nature of those transactions?" To which he answered as follows: "I don't think I did. We thought the firm was of Richmond. My remembrance is that they were from Richmond." He was also asked whether the person who gave the orders was thin or stout; to which he answered: "My remembrance is that he was thin." It appeared quite clearly that Mr. Harrison did not come within this description, but that Ficklin and Garth did. Now, Garth testified that he never saw any member of the firm of McKim & Co. in his life; that he never knew

them, and never was in their house; that he never had any personal communication with them; and that Ficklin was in Baltimore at this very time. It is grossly improbable that a busy New York broker like Mr. Garth should have left his business in this city and gone to Baltimore to give McKim & Co. a verbal order to purchase these shares, and that later he should again have wasted his time on a similar errand with regard to their sale, when pen, ink, and paper would have answered every purpose. It is highly probable . that these orders were given by Ficklin, who was "picking the shares up" in execution of the purpose which he originally disclosed to Mr. Garth; but, whether that inference be legally justifiable or not, certain it is that the orders were not given by Harrison, Garth & Co. It is quite apparent, therefore, that the attempt to exclude Ficklin from these purchases, or to make the transaction one of purchase and sale directly as between McKim & Co. and the defendants, failed, and that Mr. Garth's version of the matter stands substantially uncontradicted. We think, too, that after this great lapse of time, and upon the facts as they appear in the record, it is fairly to be inferred that Harrison, Garth & Co. settled with McKim & Co. for the purchase price of the shares before Mr. Garth or any member of his firm was aware of the fact that their names appeared in the certificates as the owners of the stock. There can be no doubt, from the entire tenor of Mr. Garth's testimony, . that, had he known of this fact, he would never have advanced the purchase price of the shares, but would have refused to honor McKim & Co.'s account therefor, and would have returned the certificates to them at once, as contrary to his understanding with Ficklin. There can be but one conclusion of law properly deducible from this state of facts. No person can be made a stockholder without his knowledge or consent. *In re Reciprocity Bank*, 22 N. Y. 9; *Keyser* v. *Hitz*, 133 U. S. 138, 10 Sup. Ct. Rep. 290. And, as was said by EARL, J., in *McMahon* v. *Macy*, 51 N. Y. 161, "there is nothing in any *status* which makes the books of the company incontrovertible evidence" on that head.

The actual fact may always be inquired into, and, if it be shown that the transferee upon the books never consented to accept the shares, the transfer to him is simply null and void. Mor. Priv. Corp. § 223, and authorities there cited. "It is," as was said in *Cartmell's Case*, L. R. 9 Ch. App. 694, "of the essence of a transfer that it should be accepted by the transferee." See, also, *Henessey's Executor's Case*, 3 De Gex & S. 191, and *Chapman's Case*, L. R. 3 Eq. 361.

Nor did the defendants, by any neglect or default, bring themselves within the rule that a person who permits his name to appear and remain in its outstanding certificates of stock and on its register as a shareholder is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder. *Whitney* v. *Butler*, 118 U. S. 655, 7 Sup. Ct. Rep. 61. That doctrine applies to one who actually is a shareholder in fact, as well as upon the books of the company, and who transfers his shares to a given person. It is ordinarily his duty to see to it that the latter causes the proper transfer to be made upon the books of the company. But here the defendants were not shareholders, in law or in fact, and they made no transfer to any given person. They simply disaffirmed the unauthorized act whereby their names were inserted in the certificates as shareholders, and placed as such upon the books of the company. They had then no means of transferring the shares to any given person. The shares had not been resold when they repudiated the transfer to themselves, and consequently there was no person to whom the retransfer could be made when such repudiation took place. What they did do was all that they could do, namely, to return the shares to the Baltimore brokers, with instructions to sell them at once, and have them transferred from their names. And it appears that when McKim & Co., in obedience to these instructions, resold the shares, the books of the corporation were closed,

and it was then too late to make the retransfer. Indeed, the company made its assignment the following month, and since then has ceased to be a going corporation. Under these circumstances, it cannot be said that the defendants have done or omitted to do anything which entitles the plaintiff, as the representative of the company or of creditors, to invoke against them the doctrine of estoppel.

Upon both the facts and the law, therefore, we think that the complaint should have been dismissed. As to the other points which were presented, we need only say that we have grave doubts as to the plaintiff's right to maintain this action, and that in several respects his position with regard to this hard and stale demand fails to commend itself to our sense of equity and justice. But these questions need not be passed upon, as the single consideration already discussed is sufficient to dispose of the entire case. The exceptions must therefore be sustained, and a new trial ordered, with costs to abide the event