the Legislature had in mind, and to prevent the spurious product from being sold, not primarily to a milk company, but to the multitude who use it.

Again, it is to be borne in mind that the plaintiff designated this as condensed milk, which, as already stated, is defined by the statute, and then seeks to inform his purchaser that it is not condensed milk at all, but a preparation or combination of pure milk and adulterated milk in equal quantities. He might have added a substance to it in order to preserve it; or, if it could be retained in the combination, have added water to it, and still be exonerated if he only said in his statement of account that it is condensed milk but contains other ingredients than milk itself.

While there is no specific prohibition against the sale of skimmed milk, yet section 44 of the agricultural law apparently restricts its sale. That section, which is not applicable to the counties of New York and Kings, provides that the prohibitions against the sale of adulterated milk are not applicable to the sale of skimmed milk if sold for use in the county in which it is produced, or an adjoining county.

The reasonable inference would seem to be from this statute that a sale made not within the express provisions of this statute is prohibited. This milk was produced in Monroe county and sold in the county of New York, so that the plaintiff is not exculpated, but rather condemned, by the section referred to.

I therefore think that the judgment should be affirmed.

WILLIAMS, J., concurs with SPRING, J.

.(71 Misc. Rep. 214.)

SOUTHWORTH v. MORGAN.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

1. CORPORATIONS (§ 232*)—LIABILITY OF STOCKHOLDERS.
    An agreement between a corporation and individual subscribers for stock, permitting the latter to take the stock gratuitously, or pay less than the par value, is not invalid as against public policy, or for any other reason, as between the parties to it, but creditors of the corporation have a right to assume that the stock has been fully paid in, and is part of the assets of the corporation, and such fund is a trust fund for the benefit of creditors, and a recovery may be had by a trustee in bankruptcy, who represents the creditors and not the corporation, of the balance of the price of such stock up to its par value.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 879; Dec. Dig. § 232.*]

2. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS — ACTIONS — CONDITIONS PRECEDENT—"DOING BUSINESS."
    A foreign corporation before suing in this state must obtain a certificate from the Secretary of State that the license fee has been paid, permitting it to do business in this state, but this rule does not apply to a suit brought by the trustee in bankruptcy of a foreign corporation to recover a balance due on certificates of stock issued by the corporation, as an effort to dispose of its stock in order to obtain the requisite capital with which to engage in business is not "doing business" within the meaning of the statute, which requires a payment of the license fee and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issuance of the certificate before a foreign corporation may do business in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2522; Dec. Dig. § 642.*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160. vol. 8, pp. 7640, 7641.]

**3. LIMITATION OF ACTIONS (§ 66*)—ACCRUAL OF RIGHT OF ACTION—LIABILITY ON STOCK SUBSCRIPTION.**

Where a corporation agrees to issue stock to a subscriber for less than the par value, and the stock is taken by the subscriber and the amount agreed upon is paid, a trustee in bankruptcy of the corporation may sue for the difference between the amount agreed to be paid and the par value of the stock, although more than six years has elapsed since the delivery of the stock, as the liability of the subscriber is only to the creditors of the corporation, and limitation did not begin to run until a demand was made by the trustee in bankruptcy.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 353–375; Dec. Dig. § 66;* Corporations, Cent. Dig. §§ 371, 404.]

**4 CORPORATIONS (§ 232*)—STOCKHOLDER'S LIABILITY—FOREIGN CORPORATIONS —SUIT BY TRUSTEE.**

A trustee in bankruptcy of a foreign corporation may sue subscribers to the capital stock who have taken the stock under an agreement to pay less than the par value thereof irrespective of any right to sue under section 57 of the stock corporation law (Laws 1890, c. 564, as amended by Laws 1901, c. 354, § 54), now section 56 (Consol. Laws 1909, c. 59), which provides that every holder of capital stock not fully paid for shall be personally liable to the creditors in an amount equal to the amount unpaid on the stock held by him, as every subscriber who takes stock under an agreement to pay less than the par value thereof is liable to the creditors of the corporation to pay in full, whether the corporation is foreign or domestic.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 879; Dec. Dig. § 232.*]

**5. CORPORATIONS (§ 232*) — FOREIGN CORPORATIONS—LIABILITY OF STOCK-HOLDER.**

A stockholder who subscribed to stock in a foreign corporation at a price less than the par value, in the expectation that a plant of the corporation would be located in a certain place, cannot escape liability to make up his subscription price to the par value of the stock after the company has become insolvent because the company did not locate its plant in the place he anticipated it would locate it, where, instead of repudiating the contract after its failure to so locate its plant, he issued a proxy to one of the officers of the corporation authorizing him to vote such stock, as such action was a recognition of his ownership of the stock, and evidence that his title was not founded entirely upon the contract to locate the plant in a certain place.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 232.*]

Kruse, J., dissenting.

Appeal from Trial Term, Oneida County.

Action by Lotus N. Southworth, as trustee of the Remington Automobile & Motor Company, bankrupt, against Andrew D. Morgan. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 153 Fed. 345, 82 C. C. A. 421.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Howard C. Wiggins, for appellant.
L. N. Southworth, for respondent.

SPRING, J.   The action is to recover the balance unpaid on two shares of capital stock held by the defendant in the Remington Automobile & Motor Company.   Said corporation was organized in pursuance of the laws of the state of New Jersey, with an authorized capital stock of 2,500 shares of the par value of $100 each.   In the fall of 1900 the defendant entered into an agreement whereby he agreed to take two shares of such stock, and the certificate therefor was duly delivered to him on the 20th of September, 1900, he paying therefor $50 and no other sum has since been paid.

The defendant resides at Ilion, in this state.   The officers of the corporation were endeavoring to locate its plant and were interesting the citizens of Ilion in order that the business might be conducted in that village.   With this purpose in view, on the 11th day of September, 1900, the following resolution was passed by the directors of said company:

"Resolved that for the purpose of securing a local interest in the Remington Automobile & Motor Company on the part of the citizens of Ilion, that 200 shares of the stock be issued to be sold at $25.00 per share, and that the pro-.ceeds of such sale be placed in the treasury to be used for regular expenses."

In pursuance of this resolution, the shares of the capital stock of the par value of $100 each were offered for sale to residents of Ilion at ·$25 per share; and 92 shares were sold at that price, and the defendant purchased relying upon this resolution.   A subscription was also started contemporaneously with the selling of this stock by which the citizens were to subscribe a certain sum as a bonus to induce the location of the plant of said company in said village.   Apparently the officers of the company were looking up other places which they deemed suitable for the location of their plant, and finally in the spring of 1901 it was located in the city of Utica.   On the 6th of November the directors passed a resolution rescinding the resolution previously quoted for the issuance of two hundred shares of stock, and providing that "no further issue of such block be made, except that which has already been subscribed for."   The business proved to be a failure, and on the 13th of December, 1902, the corporation was adjudged a bankrupt, and shortly thereafter the plaintiff was duly appointed the trustee of said company by the United States District Court.   The assets were insufficient to pay the claims of the creditors, and an application was made by the trustee to said court for leave to demand, and, if necessary, to sue the defendant and many other named holders of certificates of stock, who had taken then in reliance upon the resolution quoted, and also upon the expectation that said corporation was to locate its plant in the village of Ilion to recover the sum of $75 upon each certificate.   Notice of this application was served upon the said shareholders, including the defendant, who appeared and contested such application.   The application was granted by the United States District Court, and upon appeal to the United States Circuit Court of Appeals the order was affirmed.   153 Fed. 345, 82 C. C. A. 421.   The court re-

mitted the order to the District Court to be amended by permitting any stockholder to present "any individual defense which he might have to such action," and the order was so amended.

This action was subsequently brought and a recovery had against the defendant for the $150 unpaid upon the stock which he owned. Several objections are urged to the validity of this judgment, and I have found the case quite an intricate one. Before taking up these objections, a few general observations may be pertinent.

It seems clear that the oral agreement was specific between the officers of the corporation and the defendant that his liability for the capital stock was to be limited to the $50 which he paid therefor. This contract was valid between the corporation itself and the defendant, and no recovery could be had by it to collect the balance up to the par value. The agreement between the corporation and the individual subscribers for stock whereby the latter are permitted to take the stock gratuitously, or pay less than the par value, is not invalid as against public policy or for any other reason as between the parties to it, but a different rule obtains where the rights of creditors intervene. They have a right to assume that the capital stock of the company has been fully paid in, and that it is part of the assets of the corporation, and the authorities seem to hold, without variation to any extent, that the capital stock, including whatever may be unpaid by the several shareholders to make up its full quota, is a trust fund set apart like other assets for the benefit of the creditors. Sanger v. Upton, Assignee, 91 U. S. 56, 60, 23 L. Ed. 220. The trustee in bankruptcy primarily represents the creditors, not the corporation; and whatever advantage or right is for their benefit is vested in him as their representative.

I will now take up the principal objections raised by the counsel for the defendant.

First. There is no allegation in the complaint and no proof that the automobile company, a foreign corporation, had obtained the certificate from the Secretary of State of the state of New York that the license fee had been paid permitting it to do business in this state. The necessity of this before an action can be maintained is quite well settled. Wood & S. v. Ball, 190 N. Y. 217, 83 N. E. 21; Welsbach Co. v. Norwich G. & E. Co., 96 App. Div. 52, 89 N. Y. Supp. 284, affirmed 180 N. Y. 533, 72 N. E. 1152; Halsey v. H. Jewett Dr. Co., 190 N. Y. 231, 83 N. E. 25, 123 Am. St. Rep. 546. I think, however, the rule does not apply to this case as at the time the certificates of stock were issued the corporation was not engaged in any business. It was simply endeavoring to dispose of its stock with a view to receiving the requisite capital to enable it to engage in business. The "doing business" which the statute contemplates means business as it is expected to be carried on and conducted by the corporation, and the disposition of its capital stock does not come within the fair intent of that phrase. Union Trust Co. of Rochester v. Sickels, 125 App. Div. 105, 109, 109 N. Y. Supp. 262; Penn. Coll. Co. v. McKeever, 183 N. Y. 98, 75 N. E. 935, 2 L. R. A. (N. S.) 127; White Furnace Co. v. Miller Transfer Co., 131 App. Div. 559, 115 N. Y. Supp. 625; Vaughan Machine Co. v. Lighthouse, 64 App. Div. 138, 71 N. Y. Supp. 799. I doubt very much whether a stockholder can resort to this defense as

an excuse for failing to pay to the creditors the balance unpaid on the shares of stock which he holds. He is a component part of the corporation itself, and, if the organization or its officers has omitted to comply with the statute in this regard, the shareholder, not the representative of the creditors, should suffer for the omission.

Second. As already noted, the defendant obtained his certificate of stock in September, 1900, and this action was not commenced until October, 1909, and the defendant's counsel urges that the liability was incurred immediately upon the delivery of the certificate of stock, and that the six-year statute of limitations has run for his benefit. During all of this time there was no liability to the corporation at all. Its agreement prevented it from enforcing any claim. It was not until a demand was made on behalf of the trustee in bankruptcy that the cause of action accrued. Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184. When that officer ascertained the situation of affairs, he very properly applied to the United States District Court for leave to sue, and that leave was granted, and thereafter a demand was made, and that was less than six years go.

Third. The chief question which the counsel for the appellant urges is that the trustee in bankruptcy of this foreign corporation cannot maintain an action to enforce the liability in suit. In order to show the statutory liability in our own state, it is well to note that section 57 of the New York stock corporation law (chapter 564, Laws of 1890, as amended in 1901 [Laws 1901, c. 354, § 54]), now section 56 of the present stock corporation law (Consol. Laws 1909, c. 59), provides as follows:

"Every holder of capital stock, not fully paid, in any stock corporation shall be personally liable to the creditors to an amount equal to the amount unpaid on the stock held by him for the debts of the corporation contracted while such stock was held by him."

The cause of action in this case does not depend upon the statute. If it did, the judgment probably could not be upheld. When a man subscribes for the capital stock of a corporation and fails to pay the par value thereof, there is a contractual liability on his part enuring to the benefit of the creditors to make this payment, and that liability exists whether the corporation is foreign or domestic or wherever the agreement arose; and it is upon that principle that several of the cases have held the shareholder liable. Stoddard v. Lum, 159 N. Y. 265, 273, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541; Howarth v. Angle, 162 N. Y. 179, 187, 56 N. E. 489, 47 L. R. A. 725; Beals v. Buffalo Con. Co., 49 App. Div. 589, 592, et seq., 63 N. Y. Supp. 635; Sanger v. Upton, Assignee, 91 U. S. 56, 60, 23 L. Ed. 220, supra. In the case first cited the court used this language at page 273 of 159 N. Y., at page 1109 of 53 N. E. (45 L. R. A. 551, 70 Am. St. Rep. 541):

"Subscribers to the stock of a corporation incur a debt which may be enforced by any common-law or equitable remedy. Mann v. Cooke, 20 Conn. 178. The capital stock of a corporation is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. The creditors have a lien upon it in equity. Un-

paid stock is as much a part of this pledge and as much a part of the assets of the company as the cash which has been paid in upon it. Sanger v. Upton, Assignee, 91 U. S. 56 [23 L. Ed. 220]. At pages 60, 61 of the case last cited the United States Supreme Court says, in speaking of unpaid stock subscriptions: 'Creditors have the same right to look to it as to anything else and the same right to insist upon its payment as upon the payment of any other debt due to the company. As regards creditors, there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation.'"

In the Howarth v. Angle Case, supra, I quote the following from 162 N. Y. at page 187, 56 N. E. at page 492 (47 L. R. A. 725):

"While the liability is, for convenience, frequently called statutory, because the statute, which is the constitution of the bank, affixed the obligation to the ownership of stock, it is in fact contractual and springs from an implied promise. There is no substantial difference between the liability for an unpaid balance on a stock subscription, which is an express contract to take stock and pay for it (Stoddard v. Lum, 159 N. Y. 265 [53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541]), and the liability for the unpaid deficiency of assets assumed by the act of becoming a member of the corporation through the purchase of stock, from which a contract is implied to perform the statutory conditions upon which stock may be owned."

Independent of both the statutory and contractual liability, strictly so called, when a shareholder receives stock for which he has subscribed and not paid the par value, there is an implied agreement on his part to make up the deficiency or so much as may be necessary to meet the demands of creditors. Scovill v. Thayer, 105 U. S. 143, 153, et seq., 26 L. Ed. 968; Richardson v. Green, 133 U. S. 30, 43, et seq., 10 Sup. Ct. 280, 33 L. Ed. 516; Camden v. Stuart, 144 U. S. 104, 113, 12 Sup. Ct. 585, 36 L. Ed. 363; Handley v. Stutz, 139 U. S. 417, 427, 11 Sup. Ct. 530, 35 L. Ed. 227. This principle is based upon the well-settled proposition that the capital stock of an insolvent corporation is a trust fund for the benefit of the creditors of the corporation; and the shareholder who by a secret agreement, or for any other reason, is absolved by the corporation itself, cannot take advantage of his agreement or right, whatever it may be, as against the creditors of the corporation interested in the payment of the capital stock to its full value and extent to satisfy the obligations which they hold against it. A shareholder in the purchase of his stock must know that the capital stock is set apart and pledged for the creditors. This right of the creditors is not dependent upon any express agreement, but attaches to the stock, imposing the liability upon the shareholder.

The general principle is stated in the case last cited as follows:

"Ever since the case of Sawyer v. Hoag, 17 Wall. 610 [21 L. Ed. 731], it has been the settled doctrine of this court that the capital stock of an insolvent corporation is a trust fund for the payment of its debts; that the law implies a promise by the original subscribers of stock who did not pay for it in money or other property to pay for the same when called upon by creditors; and that a contract between themselves and the corporation that the stock shall be treated as fully paid and non-assessable, or otherwise limiting their liability therefor, is void as against creditors. The decisions of this court upon this subject have been frequent and uniform, and no relaxation of the general principle has been admitted."

Any other rule would put the creditors at a disadvantage. The incorporators might make an agreement among themselves in perfect good faith whereby some of the shareholders who by virtue of their ability to promote the business which it is designed to carry on or because of some influence advantageous to it which they might possess were relieved from paying the par value of the stock for which they had subscribed and which was issued to them. A majority of the stock might be disposed of in that way and the nominal, advertised, authorized capital would thereby be a fiction and the actual assets of the company materially lessened.

The counsel for the appellant relies upon Christensen v. Eno, 106 N. Y. 97, 12 N. E. 648, 60 Am. Rep. 429. In that case bonus stock was issued to the defendant Eno without any expectation on the part of the corporation or of himself that he should pay for it, and it was stock for which he never subscribed. The court used this language at page 101 of 106 N. Y., at page 649 of 12 N. E. (60 Am. Rep. 429) :

"There is no pretense that the defendant Eno ever subscribed for the 25 shares of bonus stock (so called) or entered into any engagement to pay the 40 per cent. credited thereon. This was distinctly contrary to the intention of all parties. The plaintiff seeks to charge him as though he had subscribed for the stock and entered into a contract obligation with the company to pay the 40 per cent."

In the present case the defendant subscribed for the stock. He testified:

"I don't know the exact date I subscribed for this stock. The paper which I signed was an agreement to take two shares of stock, which I took."

The subscription for the stock was an agreement to take the two shares, and was his written contract to that effect. The agreement by which he was to be absolved from paying more than $25 for each share of stock taken by him was an oral agreement in pursuance of a resolution of the "board of directors of the corporation." In the Christensen Case the decision proceeds upon the ground that Eno, the stockholder, who had accepted the bonus stock, got nothing "as against any one entitled to question the transaction. * * * He entered into no contract to pay it. * * * The unissued shares of a corporation are not assets. When issued, they represent a proportionate interest in the shareholder in the corporate "property—an interest, however, subordinate to the claims of creditors." It would seem, therefore, that the decision in that case rested upon the fact that there was no written agreement by the shareholder holding the bonus stock to agree to take it and pay for it. The opinion itself recognizes the implied agreement to pay for shares of stock subscribed for and which had been delivered to the shareholder. This language is used at page 102 of 106 N. Y., at page 650 of 12 N. E. (60 Am. Rep. 429) :

"But the liability of a shareholder to pay for stock does not arise out of his relation, but depends upon his contract, express or implied, or upon some statute, and, in the absence of either of those grounds of liability, we do not perceive how a person to whom shares have been issued as a gratuity has by accepting them committed any wrong upon creditors, or made himself liable to pay the nominal face of the shares as upon a subscription or contract."

In so far as the Christensen Case holds that the capital stock of a corporation is not a trust fund to its full extent for the benefit of creditors, I think it is fair to assume that the statement is based upon the particular facts in that case. In any event, it seems to me it is contrary to the later authorities in our own state, and in conflict with the unvarying enunciation of the law in the United States Supreme Court.

There is still another reason which it seems to me should render the defendant liable to the plaintiff in this action. Bear in mind that the defendant claims that he subscribed for and received the two shares in the automobile corporation solely in the belief and expectation that its plant was to be located in Ilion, and in order to secure his influence in behalf of this local enterprise. After the purpose to locate in Ilion had been abandoned and the plant located in the city of Utica, and in August, 1901, the defendant executed and delivered to the same man who induced him to take the stock and who was one of the officers of the corporation a proxy authorizing him to vote upon this stock at the annual meeting of the stockholders of the company to be held shortly thereafter, and with the usual full power of attorney to represent him at that meeting. This was a clear recognition of his then ownership of the stock, and denotes that his title was not founded entirely upon the Ilion project. He might have returned his certificate and rescinded his agreement with the corporation because he claims that a fraud was perpetrated upon him by this officer who was authorized to represent him. Instead of doing that, he retained the stock, and, if the venture had proved a profitable one, he would have shared in the benefit and been entitled to whatever dividends might have been declared on the par value of the stock. Apparently he was willing to take his chances on the business, even though carried on in Utica, instead of Ilion. He did nothing toward repudiating his liability, or claiming that his rights were to be determined by the secret agreement had with the directors until it became apparent that he was to be called upon to pay the full par value of the stock for which he had subscribed. The judgment should be affirmed.

Judgment affirmed. All concur, except KRUSE, J., who dissents in a memorandum.

KRUSE, J. (dissenting). I dissent upon the authority of Christensen v. Eno, 106 N. Y. 97, 12 N. E. 648, 60 Am. Rep. 429. In view of the express agreement to the contrary, no promise by the defendant can be implied to pay more for the stock than he paid, and in the absence of any provision in the laws of the state of the foreign corporation, subjecting the stockholder to personal liability beyond his promise, none exists, as I think, against him.