LUTHER A. HARR, Secretary of Banking of the Commonwealth of Pennsylvania, Receiver of the TITLE AND TRUST COMPANY OF WESTERN PENNSYLVANIA, CONNELLSVILLE, PENNSYLVANIA, Plaintiff, *v.* DAVID S. WRIGHT, Defendant.*

Supreme Court, Special Term, Chautauqua County, December 30, 1936.

---

*Affd., 250 App. Div. 830.

*Glenn W. Woodin*, for the motion.

*John E. Durkin* and *Allison P. Olson*, opposed.

LARKIN, J.   The plaintiff, as receiver of the Title and Trust Company of Western Pennsylvania, Connellsville, Pennsylvania, sues to recover an unpaid stock subscription.   The complaint, in substance, alleges that defendant is the transferee of 100 shares of stock of the trust company, of the par value of $100 each, upon which there is unpaid $50 per share.   It is further alleged that defendant appeared upon the records of the bank as one of its stockholders on July 1, 1930, when plaintiff, as receiver, took possession of its affairs.   The pleading refers to a statute of Pennsylvania, which provides, among other things, that stock in a trust company may be issued upon payment of fifty per cent of the par value, the balance

to be paid when required by the board of directors, and that a transferee assumes all the liabilities of the original subscribers.

The sole question presented upon this motion is whether the cause of action set forth is limited by subdivision 4 of section 49 of the Civil Practice Act, or by subdivision 1 of section 48. The cause of action is upon a contract liability pure and simple. (*Stoddard* v. *Lum*, 159 N. Y. 265, 272; *Glenn* v. *Garth*, 133 id. 18, 31.) The liability arose as against the original subscriber, either by express contract, or one implied by law, from his acceptance of the certificate from the corporation. (*Gold* v. *Paynter*, 101 Va. 714; 44 S. E. 920.) The contract of subscription is an agreement to pay the unpaid part thereof, from time to time, as it is called for by the board of directors. (*Wyman* v. *Bowman*, [C. C. A.] 127 Fed. 257.) The relation of stockholder and company implies a promise to pay such assessments as are legally assessed, and the common law furnishes a remedy for a violation of this engagement by action in assumpsit. (*Williams* v. *Lowe*, 4 Neb. 382; affd., 94 U. S. 650; 24 L. Ed. 216.) When this certificate, upon which there was unpaid $5,000 of the original subscription price, was transferred to defendant, when recognized by the corporation, the latter became liable thereon as transferee, to the same extent as the original subscriber. (*Rochester & K. F. Land Co.* v. *Raymond*, 158 N. Y. 576; *Sigua Iron Co.* v. *Brown*, 171 id. 488; *Richards* v. *Robin*, 86 Misc. 528, 532; affd., 225 N. Y. 719; *Campbell* v. *American Alkili Co.*, [C. C. A.] 125 Fed. 207; 14 C. J. 637, § 944, also § 1184.) Regardless of statute, the complaint sets forth, as against this defendant, a contract obligation at common law. It was not necessary to have referred to the Pennsylvania statute, except to negative a possible defense, or perhaps to show the extent of the contract liability and the time when the installments were due. But it is not by virtue of that statute that this cause of action arises. The most that the statute does is to amplify the terms of the agreement implied by law. Neither do I believe that this pleading is subject to the defect existing in the complaint in *Milliken* v. *Caruso* (205 N. Y. 559). There the pleader alleged a completed transaction, namely, a sale of stock at an agreed price, which had been paid. Here the language clearly indicates an uncompleted transaction. In substance, it states that this defendant owns stock in the trust company which has never been paid for, although he has been recognized by the trust company as a stockholder. It is for him to allege any circumstances excusing him from the implied liability to make good the difference. (*Atlantic Trust Co.* v. *Osgood*, [C. C.] 116 Fed. 1019.)

Viewing the cause of action as an ordinary one to collect a debt, the question then presented is whether the broad language of subdivision 4 of section 49, *supra*, applies. It must be conceded that the language of that subdivision, read literally, covers this cause of action. Nevertheless this section must be construed in the light of reason. The statute, clearly, was enacted to enforce the liability of directors of banks and the peculiar liability existing against bank stockholders. An examination of its history will demonstrate that. (*Brinckerhoff* v. *Bostwick*, 99 N. Y. 185.) It is true that in *Hobbs* v. *National Bank of Commerce* ([C. C. A.] 96 Fed. 396) the court says that the statute as it now reads is so broad as to include every class of liability of bank stockholders. Nevertheless it must be borne in mind that the question the court was there deciding was whether or not the statute should be limited to apply only in favor of a New York stockholder in a domestic corporation, and not to a shareholder in a foreign corporation. The language in *Gilbert* v. *Ackerman* (159 N. Y. 118, 122) is not so broad as that found in the *Hobbs* case. Moreover, in *Gilbert* v. *Ackerman* the court was discussing the section as to the liability of directors, and not that of a stockholder. If the section is read literally, it would fix, as the statutory limitation of an ordinary action on a note brought by a bank against one of its stockholders, three years. That construction would be absurd. Defendant insists that such an illustration is not apt, because he interprets the section as applying to liabilities created by common law, or by statute, against stockholders, as such. Defendant is clearly correct in his interpretation. As used in subdivision 4 of section 49, *supra*, the word "stockholder" is not descriptive, but is intended to limit the liabilities included; namely, those which arise by reason of being a stockholder in a moneyed corporation. The liability here asserted does not arise by reason of defendant's stock ownership in a moneyed corporation. On the contrary, theoretically, at least, his liability antedates the stock ownership and is based solely upon his promise that he would pay for something that he was about to receive. The fact that that something is a certificate of stock in a moneyed corporation is only an incident in the liability, and is not the foundation of it. The liability does not arise out of it. The discussion of this particular point in *Platt* v. *Wilmont* (193 U. S. 602; 24 S. Ct. 542; 48 L. Ed. 809) throws light on the question here presented. This cause of action is to enforce his promise to pay, to collect a debt, and is, therefore, governed by the limitation applicable to ordinary contract obligations.

Since the summons was served within six years from the time plaintiff took possession of the trust company's affairs what has

already been determined renders unnecessary a consideration of the question as to when the cause of action accrued. If the law of Pennsylvania controls, then the statutory period began at the time plaintiff took possession, July 1, 1930. (*Swearingen* v. *Sewickley Dairy Co.*, 198 Penn. St. 68; 47 A. 941; *Harrigan* v. *Bergdoll*, 281 Penn. St. 186; 126 A. 269; affd., 270 U. S. 560; 46 S. Ct. 413; 70 L. Ed. 733.) If, on the other hand, the rule, that the law of the State where the lawsuit is had governs the limitations of actions, includes the time when the period of limitation begins to run (*Great Western Telegraph Co.* v. *Purdy*, 162 U. S. 329; 16 S. Ct. 810; 40 L. Ed. 986), then a serious question would arise as to whether the claim is outlawed, even if the three-year statute applies. (*Williams* v. *Taylor*, 120 N. Y. 244; *Southworth* v. *Morgan*, 71 Misc. 214; affd., 143 App. Div. 648; revd., on other grounds, 205 N. Y. 293; *Matter of Scheftel*, 155 Misc. 632.) It may be that this cause of action never came into existence until the receiver made a demand upon defendant for the balance of the unpaid purchase price of the stock. Such a holding would accord with *Hawkins* v. *Glenn* (131 U. S. 319; 9 S. Ct. 739; 33 L. Ed. 184); *Glenn* v. *Liggett* (135 U. S. 533; 10 S. Ct. 867; 34 L. Ed. 262); *Glenn* v. *Marbury* (145 U. S. 499; 12 S. Ct. 914; 36 L. Ed. 790). This same question was presented in *Glenn* v. *Garth* (60 Hun, 584; affd., 133 N. Y. 18; writ of error dismissed, 147 U. S. 360; 13 S. Ct. 350; 37 L. Ed. 203). In all these cases the actions were to recover unpaid stock subscriptions brought by Glenn as trustee of the National Express and Transportation Company. The corporation became insolvent, and on the 20th of September, 1866, made an assignment for the benefit of its creditors. Eighty per cent of the par value of all stock was unpaid. Thereafter the Virginia court, on December 14, 1880, directed the trustee to call and collect thirty per cent of the par value. Subsequently, on December 14, 1886, the trustee was directed to call the balance unpaid, of fifty per cent. The action (*Glenn* v. *Garth*, *supra*) was to recover the entire eighty per cent unpaid on the stock. The Statute of Limitations was pleaded, as it was in all of the *Glenn* cases. The action was determined adversely to plaintiff, but upon another ground. In the opinion of Judge FINCH in the Court of Appeals the question of the Statute of Limitations is not discussed. At the General Term Mr. Justice BARRETT refers to it, but incidentally merely. Nevertheless the question was presented and was raised, but was not made the basis, or even a ground for the decision adverse to plaintiff's claim.

For the foregoing reasons, the motion is denied, with ten dollars costs.