## SEIBERT v. DUNN.

(Supreme Court, Trial Term, Kings County. January 14, 1911.)

1. SET-OFF AND COUNTERCLAIM (§ 50*)—COUNTERCLAIM TO ASSIGNED CLAIM.

Under Code Civ. Proc. § 502, providing that, to be available as a counterclaim against an assigned claim, a demand against the assignor must have existed at the time of the assignment, the recovery by an assignee of a claim for brick delivered under a contract with defendant cannot be defeated by a counterclaim for damages for the assignor's breach of the contract a year later by refusing to deliver further brick under the contract, the statute being equally applicable both at law and in equity; and the fact that the assigned claim did not become payable until after assignor's breach of his contract does not alter the rule.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 113; Dec. Dig. § 50.*]

2. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—ACTIONS—LICENSE TAX—FAILURE TO PAY—EFFECT.

The defense that the license tax of a foreign corporation had not been paid, as required by Laws 1901, c. 558, § 181, providing that a foreign corporation, which had been in business in the state for over 12 months before the passage of the act, and did not pay such tax within 30 days after the tax was due, should not maintain any action or have any recovery in any state court, is ineffective, in the absence of any showing that the tax had ever been fixed by the comptroller so as to be due.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2542–2544; Dec. Dig. § 661.*]

Action by John S. Seibert against Bart Dunn. Upon verdict of jury, finding for plaintiff.

O'Brien, Boardman, Platt & Dunning, for plaintiff.
Eidlitz & Hulse, for defendant.

CRANE, J. The plaintiff is an assignee of the amount due the Eastern Paving Brick Company upon a contract with the defendant, Bart Dunn, for brick delivered thereunder, and the principal question which has arisen is whether the defendant can defend or counterclaim because of the damages he has sustained through a subsequent breach of the contract by the assignor.

The facts are as follows: On July 11, 1900, the Eastern Paving Brick Company, by written contract, agreed to furnish the defendant all the vitrified brick required by him in the performance of the work under his contract with the city of New York for sewers and appurtenances in Broadway. The contract price was $13.50 per thousand, to be paid by the advance of freight and unloading charges, and cash on the 15th of each month amounting to 90 per cent. of the monthly estimate or certificate of the city engineer showing the quantity of brick laid during the preceding month; the remaining 10 per cent. to be paid in cash 30 days after the last shipment of vitrified brick required under the contract. During 1900 the Eastern Paving Brick Company shipped to the defendant 559,000 brick, all of which, except as hereafter stated, were used by the defendant in the Broadway sewer. The amount to be paid for these brick under the contract would have been $7,546.50, on account of which Dunn paid thereafter $2,500 and ad-

vanced freight charges of $1,224.20, leaving a balance due of $3,-822.30, less the deductions hereinafter mentioned. These brick were not all used in the year of delivery, so that the installments due under the contract pursuant to the engineer's certificates did not mature until after May 1, 1902, but was all due at the time this action was brought. Prior to the maturity of these installment payments, and on June 20, 1901, the Eastern Paving Brick Company assigned its claim against the defendant for the brick furnished under this contract to a Mr. Eells, who thereafter assigned it to the plaintiff, which assignments, so far as this case is concerned, appear to have been in good faith and for value.

In May, 1902, the Eastern Paving Brick Company went into the hands of a receiver, and thereafter defaulted in its contract by failing to deliver the additional brick required by Bart Dunn, and it is conceded that his damage in being compelled to purchase thereafter the requisite brick in the market amounted to more than the sum due for the brick delivered, or the plaintiff's claim sued on in this action. On June 20, 1901, when the Eastern Paving Brick Company assigned its unmatured claim against Bart Dunn to Mr. Eells, the defendant had no existing claim or demand or cause of action against the brick company, as its breach of contract did not occur until a year thereafter, or in May of 1902, at which time he did have a claim against it for his damage as above stated equal in amount to the assignee's claim against him.

The question is: Can the defendant set off or counterclaim his damages for this breach of contract against the assignee of the amount due the Eastern Paving Brick Company for the brick previously delivered or can he use these facts as a defense? Such a claim would have been a defense at common law in an action brought by the assignor—a defense in the nature of a recoupment as distinguished from a set-off. Recoupment at common law was a defense which, if successful, reduced the plaintiff's demand to the extent of the amount recouped. It was not pleaded as is our present counterclaim nor considered as a set-off, but rather as a defense in the nature of payment. Waterman on Set-Off, § 416, and all of chapter 10. Under our present Code system of pleading, however, recoupment, set-off, and demands in the nature of counterclaims allowed by statute are all treated alike, and cannot be pleaded or proved as defenses, but must be pleaded and tried as counterclaims pursuant to the provisions of the Code of Civil Procedure. This was decided as late as 1909 in Deeves & Son v. Manhattan Life Insurance Co., 195 N. Y. 324, 88 N. E. 395, the opinion stating:

"When a defendant has an election to set up a cross-claim of any kind to diminish or overcome the claim of the plaintiff, or to bring an independent action thereon, it necessarily follows that such claim, if asserted, must be set up as a counterclaim in the action, whether it constitutes what was formerly denominated a recoupment, or it is any other claim coming within the Code definition of a counterclaim. The right to recoup which is asserted in cases of this kind means simply the right to plead a counterclaim under the Code."

The claim of the defendant against the brick company for breach of contract must therefore be treated as a counterclaim to be set

forth and tried as such. Can the defendant counterclaim his damage against the brick company's assignee?

Sections 501 and 502 of the Code of Civil Procedure, defining counterclaims, provide that as against the assignee of the contract sued upon the demand to be counterclaimed must have existed against the assignor at the time of the assignment.

The defendant's counsel in this case insists that equity is not bound by these Code provisions, and will permit set-off even where the facts do not bring the case within them, and he is justified in making this assertion by statements in some of the cases, viz., Smith v. Felton, 43 N. Y. 419, Rothschild v. Mack, 42 Hun, 72, affirmed 115 N. Y. 1, 21 N. E. 726, Hughitt v. Hayes, 136 N. Y. 163, 32 N. E. 706, and Richards v. La Tourette, 119 N. Y. 54, 23 N. E. 531, but these cases go no further than to hold that in equity mere formalities or technicalities may be brushed aside and a claim against the assignor be considered as due at the time of the assignment which at law might not be actually due by reason of some omitted technicality or demand. I can find no case which has changed the rule that a demand to be set off against an assignee must have been in existence against the assignor at the time of the assignment. In the Smith Case the court considered a note due which drew no interest. In the Hughitt Case equity considered the demand for a deed as having been made at the time of the assignment; while the case of Rothschild v. Mack was explained in Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, 17 L. R. A. 456, upon the theory that it was a cause of action for fraud which must have existed at the time of the assignment. In the Richards v. La Tourette Case the court decided that the party seeking to counterclaim had the right to waive his time of payment and to consider his debt as due the assignor at the time of the assignment. The rule appears, therefore, to be firmly established that both law and equity follow the Code provisions of counterclaim, and that a demand to be counterclaimed against an assignee must have been in existence against the assignor at the time of the assignment of the contract. The circumstance that the claim assigned has not yet matured, or that it does not become payable until after the debtor's claim against the assignor has arisen or matured, does not change or modify this rule. Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, 17 L. R. A. 456; Raymond v. Hogan, 10 App. Div. 189, 41 N. Y. Supp. 971; Myers v. Davis, 22 N. Y. 489; Martin v. Kunzmuller, 37 N. Y. 396; Watt v. City of New York, 1 Sandf. 23; Lucas v. East Stroudsburg Glass Co., 38 Hun, 581; Mead v. Gillett, 19 Wend. 397; Willover v. First National Bank of Olean, 40 Hun, 184.

Patton v. Royal Baking Powder Co., 114 N. Y. 1, 20 N. E. 621, and Zabriskie v. Central Vermont R. R. Co., 131 N. Y. 72, 29 N. E. 1006, cited by the defendant's counsel, are not in point, as in these cases the assignee assumed the contract and attempted to carry out its obligations. The damages which defendant has sustained through the breach of his contract by the Eastern Paving Brick Company cannot be counterclaimed against the plaintiff-assignee herein, as the claim and demand was not in existence at the time of the assignment.

One other question remains to be considered, and that is the defense

that the license tax on foreign corporations was not paid by the Eastern Paving Brick Company, a foreign corporation, as provided in section 181, c. 558, Laws 1901. As this corporation was doing business for more than 12 months prior to April 26, 1901, when the act took effect, the last clause of section 181 is applicable thereto. It reads:

"No action shall be maintained or recovery had in any of the courts in this state by such foreign corporation without obtaining a receipt for the license fee hereby imposed within thirteen months after beginning such business within the state, or if at the time this section takes effect such corporation has been engaged in business within this state for more than twelve months, without obtaining such receipt within thirty days after such tax is due."

The difficulty with this point raised by the defendant is that there is nothing in the evidence or in his pleading to show when the tax became due. In Wood & Sellick v. Ball, 190 N. Y. 217, 83 N. E. 21, and Halsey v. Jewett Dramatic Co., 190 N. Y. 231, 83 N. E. 25, 123 Am. St. Rep. 546, it was decided that chapter 240 of the Laws of 1895 was still applicable, not having been repealed and that the amount of the tax is to be fixed by the comptroller, who is authorized to examine the books, records, and employés for that purpose. There is no evidence or allegation that the comptroller ever fixed the tax, and it is quite evident that foreign corporations were not intended to tax themselves. No tax being computed, no tax was due, and the prohibitions of section 181 do not apply to this case.

Much of the evidence in this case was undisputed so that by consent of counsel only certain questions of fact were left to the jury for determination, and they have found that the Eastern Paving Brick Company broke the contract with Dunn, and that a deduction of $375 should be made from the plaintiff's claim for defective material. All the other facts being undisputed, it remains for me to direct a verdict upon these findings of the jury by consent of the counsel, which I do according to the following figures: It is conceded that the value of the brick furnished was $7,546.50. Deducting $375 for defective brick, leaves $7,171.50, and, taking from this figure 10 per cent. which the defendant was to withhold till the completion of the contract, leaves $6,454.35, from which is to be taken $2,500 payment and $1,224.20 advanced freight, and the remainder, $2,730.15, is the amount which the plaintiff must recover herein. As to the question of interest, I desire to see counsel.