In the Matter of the Estate of EDWIN KING SCHEFTEL, Deceased.*

Surrogate's Court, New York County, May 20, 1935.

*Andrew A. Fraser* [*Blaine F. Sturgis* of counsel], for the executors.

*Patterson, Eagle, Greenough & Day* [*Carroll G. Walter* and *James Lee Kauffman* of counsel], for the claimant.

*Lewis E. Sisson*, special guardian, for infant.

DELEHANTY, S. In a letter to deceased dated November 25, 1925, he was invited to subscribe to the shares of a corporation which was organized on December 1, 1925, in the State of Delaware. By letter of November 30, 1925, he agreed to take twenty-five shares of preferred stock at $1,000 per share and agreed to pay twenty per cent of the price on December 10, 1925. He paid $5,000 on account of his subscription of $25,000, leaving a balance of $20,000 subject to call. Concededly he received a certificate

* Seo, also, 150 Misc. 3.

for the full number of shares subscribed for by him. No further call for any part of the balance was made while deceased lived. After his death the corporation, by appropriate resolution, required payment on July 11, 1932, and due notice of the call was given to the executors of deceased. The question here for decision is whether or not the $20,000 so called is payable by the estate of deceased. The executors have accounted and report rejection of the claim. The corporation has filed objections to the account and the executors have interposed an answer thereto setting up various defenses to the claim. The number and character of these defenses require somewhat extended comment.

The corporation was organized to trade in securities. Trades were actually initiated through the incorporators prior to its formal organization on December 1, 1925. It was actively in business on December 11, 1925, when the payment of $5,000 was made by deceased and when delivery of its shares was made to deceased. All this was done in New York city and State.

Defenses of estoppel and waiver are alleged but are supported by no proof. They must be dismissed.

A defense that the claim is barred by the Statute of Limitations is also insufficient. The contract with deceased permitted a call at any time within the discretion of the directors of claimant company. The call was not made until 1932 and of course the liability, if any, is not barred by any statute of limitations since it did not arise until the call.

The executors defend on the ground that the General Corporation Law and the Tax Law prevent enforcement of the claim. Claimant says that the cited provisions of the Tax Law and of the General Corporation Law are not applicable because a proceeding to enforce a claim as a creditor in this court is not an action within the meaning of the General Corporation and the Tax Laws. There is no substance to that position of claimant. The proceedings here are in every sense the same in legal effect as if an action to recover on the claim had been initiated in a court of general jurisdiction on an ordinary summons and complaint. (*Bridge's Sons, Inc.,* v. *State,* 188 App. Div. 500; affd., 231 N. Y. 532.)

In avoidance of the defense based on the General Corporation Law, claimant argues that the contract here is unilateral, that it is not a contract connected with or incidental to any business carried on by it in this State, and that for this reason it is not a contract unenforcible here even though claimant has obtained no license to do business here. That seems to be a sound reply to this particular defense. By deceased's payment of the $5,000 and his acceptance of the shares of stock in respect of which a balance

of $20,000 was concededly subject to call there was left nothing further for the corporation to do on its part in the transaction. The only person who had any obligation thenceforth was the deceased. He assumed the liability for paying the balance of the subscription price when it was called. Under the authorities that obligation is enforcible despite the provisions of the General Corporation Law. (*Commercial Coal & Ice Co.* v. *Polhemus,* 128 App. Div. 247; *Tallapoosa Lumber Co.* v. *Holbert,* 5 id. 559; *Southworth* v. *Morgan,* 143 id. 648; revd. on other grounds, 205 N. Y. 293.)

The public policy of this State declared in the General Corporation Law does not bar enforcement of a contract made by an unlicensed company if at the time of making the contract the corporation was not doing business in the State within the meaning of the General Corporation Law. The fact that thereafter the corporation engages in business in the State without procuring a license to do so does not under this law bar our courts to it in the enforcement of a contract made before it initiated a general course of business. (*International Fuel & Iron Corp.* v. *Donner Steel Co.,* 242 N. Y. 224.) The making of a single contract is not the " doing business " which bars access to our courts. (*Penn Collieries* v. *McKeever,* 183 N. Y. 98; *International Fuel & Iron Corp.* v. *Donner Steel Co., supra.*) It follows that the defense based on the General Corporation Law is insufficient.

There remains for consideration only the defense which is based on the terms of section 181 of the Tax Law. So far as here applicable that section says: " No action shall be maintained or recovery had in any of the courts in this state by such foreign corporation after thirteen months from the time of beginning such business within the state, without obtaining a receipt for the payment of the license fee upon the capital stock employed by it within this state during the first year of carrying on its business in this state."

The answer interposed by the executors asserts that claimant is a foreign stock corporation, that it conducted its business and employed its capital in this State continuously since December 1, 1925, and that it never paid the license tax required by section 181 of the Tax Law. The proof presented sustains these allegations of the executors. The court finds as a fact that claimant company is a stock corporation; that it employed its capital stock in this State; that it carried on its business here exclusively; that it procured no license to do business here; that it paid no license fee upon the capital stock employed by it within this State during the first year of carrying on its business in this State; that it has never paid a license fee and that more than thirteen months have elapsed

since it began business and employed its capital within the State.

Not a little confusion exists in the authorities respecting the application of the statutory bar to recovery in our courts arising from failure of a foreign stock corporation employing capital here to make payment of the license tax required by the Tax Law. In *Halsey* v. *Jewett Dramatic Co.* (190 N. Y. 231, 234) it was decided that a defense of non-payment of the license tax was not good unless there had been an assessment of the tax and a default in payment after such assessment. (See, to the same effect, *Seibert* v. *Dunn,* 70 Misc. 422.) These cases, however, are not applicable here because the provision upon which they turned was eliminated from section 181 of the Tax Law by chapter 340 of the Laws of 1910. This provision required the corporation to obtain a receipt for the tax " within thirty days after such tax is due." Except for a minor change of no importance the excerpt heretofore quoted gives the text of the Tax Law as it has been since May 21, 1910. The cases decided since that date must be considered in the light of the text of the Tax Law as it now stands.

In *Fairmount Film Corp.* v. *New Amsterdam Casualty Co.* (189 App. Div. 246; decided in 1919 on an issue which obviously arose after May 21, 1910) the real point in controversy was whether or not a foreign corporation could maintain an action on an attachment undertaking given by a plaintiff in a suit in a New York court against the foreign corporation. The case held that the foreign corporation might sue upon the undertaking because the statutory prohibition was limited to contracts made by the foreign corporation and not to contracts inuring to its benefit by implication of law as was the case with this attachment bond. All that was necessary to that decision was a holding that the bar of the statute did not apply to the type of action before the court. The opinion, however, contains the statement *obiter* that the defense predicated upon the Tax Law was insufficient because it did not allege the fixation of the license fee by the State Tax Commission. The opinion states further that the license fee is not payable until the amount has been fixed by the Commission. This view is the same as that expressed in *Halsey* v. *Jewett Dramatic Co.* (*supra*) on a Tax Law differently phrased. It is not clear whether the change in the law was called to the court's attention. The opinion in the *Fairmount Film Corp. Case* (*supra*) restates a further idea, also *obiter,* that the Tax Law provisions relate only to foreign corporations which have procured the certificate contemplated by the General Corporation Law authorizing them to do business in this State. For the latter proposition the court cites *Hoevel Sand-Blast Machine Co.* v. *Hoevel* (167 App. Div. 548). The case so cited

undoubtedly says that the section of the Tax Law had no application " because that relates to the tax to be paid after the certificate has been issued." However, in the *Hoevel Sand-Blast Machine Co.* v. *Hoevel Case* (*supra*) the real question at issue was whether a suit in equity might be maintained in our courts by an unlicensed foreign stock corporation to restrain the unlawful use here of a trade name. All that was necessary to decide in the case was that since the action was not upon a contract and since it did not arise by reason of any business transacted by the foreign corporation in this State and did not involve any recovery of money it did not come within the purview either of the General Corporation Law or of the Tax Law. The commentary in this opinion as to the incidence of the tax was purely *obiter* just as like comment was in the *Fairmount Film Corp.* v. *New Amsterdam Casualty Co. Case* (*supra*). Moreover, the court in *Fairmount Film Corp.* v. *New Amsterdam Casualty Co.* (*supra*), made no comment upon and may have failed to note the effect of the change in the Tax Law made by chapter 490 of the Laws of 1917. The *Hoevel Sand-Blast Machine Co.* v. *Hoevel Case* (*supra*), upon which reliance was placed, was decided in 1915 when the section dealing with the liability for the license tax expressly provided that it was payable by corporations " authorized to do business under the General Corporation Law." By the amendment of 1917 that phrase was eliminated and the words " doing business in this state " were substituted for it. Thenceforth the status giving rise to the liability for the tax was the actual doing of business in this State and not the authorization to do business. The various amendments to section 181 effected by chapter 490 of the Laws of 1917 seem designed to close to foreign corporations the loophole pointed out in *Hoevel Sand-Blast Machine Co.* v. *Hoevel* (*supra*) and *Halsey* v. *Jewett Dramatic Co.* (*supra*). Since the opinion in the *Fairmount Film Corp.* case does not undertake comment on the effect of these changes under the act of 1917 it may be surmised that no thought was given thereto. In the light of the later declaration by the same court in a case hereafter discussed the *obiter* commentary in the *Fairmount Film Corp.* opinion probably should be given no weight.

The cases (*e. g. Mahar* v. *Harrington Park Villa Sites*, 204 N. Y. 231) hold that the contract itself is not rendered invalid by reason of the failure to comply with the General Corporation Law or with the Tax Law; and that no right of rescission inures to the other party to the contract because of the corporation default. Still others (of which an example is *Alsing Co.* v. *New England Quartz & Spar Co.*, 66 App. Div. 473; affd., 174 N. Y. 536) establish the proposition that when a foreign corporation is brought into our courts against

its will it has the right to make all defenses, including full enforcement of counterclaims, notwithstanding its failure to conform to the requirements of the General Corporation Law and of the Tax Law.

Other cases (of which an example is *Parmele Co.* v. *Haas*, 171 N. Y. 579) hold that the objection based on the statutory bar must be taken by answer or demurrer and that it will be waived if not properly taken. The case instanced holds that non-compliance is a matter of defense and that a complaint is not defective which fails to allege compliance. In the opinion (p. 583) there is some applicable *obiter dictum* to the effect that compliance with the Tax Law provision is necessary " in order to acquire the right to do business here and to enforce causes of action in our courts."

Some opinions in the cases noted indicate the view of the writers that the provisions of the General Corporation Law and of the Tax Law are complementary each of the other and that the bar to be effective must rest upon a basis valid in respect of both. That idea was rejected by the Appellate Term in this Department in *American Ink Co.* v. *Riegel Sack Co.* (79 Misc. 421), where it is stated expressly that section 181 of the Tax Law is broader in its application than are the provisions of the General Corporation Law. That case held that the defense based on the Tax Law was valid though the defense based on the provisions of the General Corporation Law was not. The case itself is of value only as presenting the view that the two statutes are separate in their application. The result in the particular case was wrong (it held that a tax defaulting foreign corporation could not enforce a counterclaim) and it was overruled in *Howden & Co., Inc.*, v. *American C. & E. Corp.* (194 App. Div. 164).

The last cited case (*Howden* v. *American C. & E. Corp., supra*) was affirmed in 231 New York, 627. That affirmance established only concurrence by the Court of Appeals in the result reached (*Matter of McKinney* v. *McGoldrick*, 266 N. Y. 632, 665). However, in the Appellate Division opinion there is a declaration about the provisions of the General Corporation Law and those of the Tax Law which, though *obiter*, seems to be intended as a definition by the Appellate Division in this Department of the scope of the application of section 181 of the Tax Law. The court there said (p. 169): " The general policy of the law is apparent to forbid an appeal to the courts in an affirmative action by any foreign corporation which has not obtained a certificate of authority as prescribed by section 15 of the General Corporation Law or which, after thirteen months, has not paid the tax as provided by section 181 of the Tax Law. * * * I think it was intended by this

phrase to forbid a recovery after the thirteen months in case the tax has not been paid." To the same effect see *Mahar* v. *Harrington Park Villa Sites* (*supra*, p. 235) and *Parmele Co.* v. *Haas* (*supra*, p. 583). These declarations are applicable here and unless their application can be avoided the defense here presented upon the basis of the Tax Law must be held to be good. It might be noted in passing that the discussion in *Howden* v. *American C. & E. Corp.* (*supra*) disposes completely of the idea expressed *obiter* in *Hoevel Sand-Blast Machine Co.* v. *Hoevel* (*supra*), that the Tax Law applies only to corporations which have procured a license and have thereafter failed to pay the tax. The amendment of 1917 would account for this change of view, of course.

The disjunctive " *or*," used in the quotation from the opinion in *Howden* v. *American C. & E. Corp.* (*supra*), warrants only the view that the court intended to emphasize that *either* the failure to procure the license *or* the failure to pay the license tax would bar recovery. Unless the Tax Law provision is to be denied independent status as a bar (nothing in its text either justifies or requires such denial) and unless it is to be emasculated entirely, it must be held applicable here. If not in this instance, in what sort of case can the bar be held effective? As has been herein noted, the courts have made various exceptions in applying the terms of the General Corporation Law and, as against defenses based only on that law, have permitted recovery on unilateral contracts and on contracts entered into before the corporation began business here in the sense defined in the cases. No reason in justice or in protection of commerce requires extension of such exceptions into the field of Tax Law defenses when the corporation seeking recovery in our courts is defiant of our laws and is a persistent defaulter under the Tax Law. Here the objectant is seeking affirmative relief in one of the courts of this State. Its claim stands rejected and it seeks allowance by this court. The statute bars recovery because on proper pleadings objectant has been shown to have failed to pay the license tax though doing business and employing its capital in this State for more than thirteen months. It gains no advantage by reason of the fact that the issue arises in an estate administration. Had deceased been living he could have defended successfully if sued in any court of this State. His executors are in like case. Accordingly the claim is disallowed and the objections to the account submitted by claimant are overruled.

Submit, on notice, decree settling the account in conformity with this decision.