In the Matter of the Judicial Settlement of the Account of Proceedings of ANDREW A. FRASER and FLORENCE FRASER SCHEFTEL, as Executors, etc., of EDWIN KING SCHEFTEL, Deceased.*

TRINITY SECURITIES COMPANY, Claimant, Appellant; ANDREW A. FRASER and FLORENCE FRASER SCHEFTEL, as Executors, etc., of EDWIN KING SCHEFTEL, Deceased, Respondents.

First Department, March 25, 1937.

*Carroll G. Walter* of counsel [*James Lee Kauffman* and *William B. Denton* with him on the brief; *Patterson, Eagle, Greenough & Day*, attorneys], for the appellant.

*Blaine F. Sturgis* of counsel [*Andrew A. Fraser*, attorney], for the respondents.

*Lewis E. Sisson*, special guardian for Florence Sophia Fraser Scheftel, infant.

* Affg. 156 Misc. 443.   See, also, 155 Misc. 632.

DORE, J. Trinity Securities Corporation, claimant and appellant, is a foreign stock corporation organized in Delaware on December 1, 1925. From the time of its incorporation it exclusively conducted its business and employed its capital in this State but it never procured a certificate of authority under section 210 of the General Corporation Law, and prior to instituting this litigation and before the decision of the court herein, it never paid the license fee required of foreign corporations by section 181 of the Tax Law. After the surrogate had announced his decision disallowing its claim and before the entry of the decree, the corporation paid the tax, procured a receipt and asked leave to submit the same and have its claim allowed. This application was properly denied. While we consider that the surrogate did not lack jurisdiction to reconsider his decision, we find that on the merits he quite properly exercised his discretion to refuse to do so in this case.

The appeal is from the decree disallowing the claim on the ground that it was barred under section 181 and from the order denying the application to submit proof of payment of the tax after the decision was made. We hold that the conclusions reached by the learned surrogate are correct and should in all respects be affirmed. The only issue raised that need be considered in this opinion is the applicability of section 181 of the Tax Law. That section, so far as relevant, provides:

" § 181. License tax on foreign corporations. * * * Every foreign corporation, [with certain exceptions not here material] doing business in this State, shall pay for the use of the State, a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this State, to be computed upon the basis of the capital stock employed by it within this State, during the first year of carrying on its business in this State; * * *. The amount of capital upon which such license fees shall be paid shall be fixed by the State Tax Commission, which shall have the same authority to examine the books and records in this State of such foreign corporations, and the employees thereof as it has in the case of domestic corporations, and the State Tax Commission shall have the same power to issue a warrant for the collection of such license fees, as now exists with regard to domestic corporations."

The section concludes with the following mandatory provision: " No action shall be maintained or recovery had in any of the courts in this State by such foreign corporation after thirteen months from the time of beginning such business within the State, without obtaining a receipt for the payment of the license fee upon the

capital stock employed by it within this State during the first year of carrying on its business in this State."

The tax imposed by this section is a license fee assessable against a foreign corporation for the privilege of doing business within the State. (*People ex rel. Griffith, Inc.*, v. *Loughman*, 249 N. Y. 369, 374, 375.)

Prior to the enactment of chapter 490 of the Laws of 1917, section 181 applied only to foreign corporations " authorized to do business under the General Corporation Law," that is, only to such corporations as had complied with and secured the certificate of authority prescribed by the then section 15 of the General Corporation Law, later section 110 of the Stock Corporation Law of 1923, now section 210 of the General Corporation Law of 1929. The amendment of 1917, among other things, substituted the words " doing business in this State " for " authorized to do business under the General Corporation Law." Since the year 1917 section 181 embraces " every foreign corporation  *  *  *  doing business in the State " (with certain exceptions, irrelevant here, relating to banking, fire insurance companies, etc.), irrespective of compliance or non-compliance with present section 210 of the General Corporation Law (formerly section 15), and cases indicating an opposite ruling are no longer authority. (*People* v. *Tropical Fruit Corp.* [1930], 252 N. Y. 605.)

This proceeding by a foreign corporation that has exclusively conducted its business in the State without procuring the certificate of authority required or paying the license fee required before suing in our courts, is an " action " within the purview of section 181, as the foreign corporation has initiated the proceedings seeking affirmative relief in the Surrogate's Court. The proceeding was commenced without right and the fact that after the surrogate's decision of May 20, 1935 (155 Misc. 632), the corporation, in order to comply with the decision, paid the license fee does not take it from the purview of the statute. The appellant cannot continue, maintain or recover in this proceeding which in the first instance it had no right to initiate or bring. Neither should the courts encourage gambling on the outcome of a decision and belated efforts to comply when the ruling is adverse.

Commenting upon this present provision as now contained in section 181 of the Tax Law, the Board of Statutory Consolidation in its report made in 1907, at page 5898, stated: " Neither in the original section [Laws of 1896, chap. 908, § 181] nor in the amendment [Laws of 1906, chap. 474, § 1] has there been inserted the provision contained in the statute of 1895 [Laws of 1895, chap. 240] as to how the Comptroller was to fix the amount of the capital

stock employed where he disagreed with the report made by the foreign corporation. * * * in the absence of any provision relating to the method for fixing the amount of the capital stock of a foreign corporation under the provisions of § 181, where the Comptroller disagrees with the corporation, it has been deemed wise to incorporate it as a part of § 181, as embracing statutory law of a general nature that has not been expressly repealed or superseded by subsequent legislation on the same subject."

The purpose of this provision formerly contained in chapter 240 of the Laws of 1895, and now incorporated in section 181 of the Tax Law, is correctly and clearly stated in said Report of the Board of Statutory Consolidation: " Where the Comptroller [now the State Tax Commission] disagrees with the corporation " concerning the claimed amount of its capital stock employed within this State, then the State Tax Commission is empowered and authorized to examine the books and records in this State of such foreign corporation and the employees thereof. The Board of Statutory Consolidation clearly considered that the proceedings must be initiated by the foreign corporation as it discusses how the Comptroller is to fix the amount of capital stock employed when he disagrees with " the report made by the foreign corporation."

Section 197 of the Tax Law provides that in order to escape additional interest or penalty, " A tax or fee imposed by section one hundred eighty-one of this chapter shall be due and payable immediately after the close of the first year of carrying on business in this State." It is to be noted that there is no clause granting any postponement of payment to a delinquent foreign corporation because of non-action, without fault, on the part of the State Tax Commission. The statute does not say the tax or fee shall be due after the notice is received but that it shall be due after the close of the first year of conducting business, and then it adds, not in the alternative but as an additional provision, " and without interest or penalty if paid within thirty days after notice." Showing the intent of the Legislature, this section, as amended, provides for both interest and penalty therein: " or in any other case if such tax or fee is not paid to the Tax Commission within thirty days after the same becomes due " the corporation liable to pay the tax or fee shall pay in addition to the amount of the tax " a sum equal to five per centum thereof " and " one per centum additional for each month the tax or fee remains unpaid, which sum shall be added to the tax or fee and paid or collected therewith."

The decision of the Court of Appeals in *International Petroleum Co.* v. *Mexican Sinclair Petroleum Co.* (238 N. Y. 554 [1924])

is distinguishable from this case and cannot be controlling here. As indicated in the opinion of the Special Term, that case appears to have rested on the then established authority that section 181 related only to foreign corporations authorized to do business in the State, that is to corporations that had complied with section 15 of the General Corporation Law (now section 210 of the General Corporation Law). *Fairmount Film Corporation* v. *New Amsterdam Casualty Co.* (189 App. Div. 246) and *Hoevel Sandblast Machine Co.* v. *Hoevel* (167 id. 548), which " constrained " the court at Special Term in the *International Petroleum* case to hold that the defense of section 181 as alleged was insufficient because of the failure to comply with section 15, are no longer authority on that point of law. As hereinbefore indicated, in *People* v. *Tropical Fruit Corp.* (252 N. Y. 605), the Court of Appeals in January, 1930, ruled that foreign corporations doing business in the State are liable for the license tax regardless of whether they had obtained the certificate authorizing them to do business here.

The amendments indicated above and other amendments of the law, as well as the purposes indicated in the report of the Board of Statutory Consolidation, show that the Legislature realized it would be impracticable, if not impossible, for the State Tax Commission to discover foreign corporations which came into the State and utilized the privilege of doing business therein without obtaining the certificate of authority required by section 210 of the General Corporation Law, and conducted their business in competition with corporations which, in conformity with law met the tax obligations imposed upon them by section 181.

Of course the Tax Commission must ultimately fix the amount of the tax or fee; no other body is competent to do so. But the issue on this appeal is a narrower one, viz., Can a foreign corporation that has not paid the tax sue in our courts?

We hold that the plain provisions of section 181, as amended, require the payment of the license fee imposed within thirteen months after the time of beginning business within this State as a condition to the right of affirmative action by a foreign stock corporation carrying on business in this State. There is, it is true, no express requirement to file reports as in the case of domestic corporations, but there is an express and mandatory prohibition against maintaining an action in any of the courts of this State if the license fee is not paid. No special or astute analysis of the Tax Law is necessary to understand the meaning of such plain and unambiguous language. The obligation cannot be obviated and the statute frustrated by neglect to initiate appropriate steps before the State Tax Commission *if the foreign cor-*

*poration desires to sue in the courts of this State;* and any foreign corporation desiring to do so can easily ascertain with accuracy the exact amount of its taxable liability and cannot be deprived of the right to maintain an action, if it has procured the receipt required.

*Halsey* v. *Jewett Dramatic Co.* (190 N. Y. 231) is not controlling. That decision, made in 1907 on a question of pleading, construed chapter 558 of the Laws of 1901, and also chapter 240 of the Laws of 1895. The act has been substantially amended since the ruling in that case and, as herein indicated, subsequent decisions show that it is the policy of our law to forbid appeal to our courts in affirmative actions by foreign corporations that have not paid the tax as provided in section 181. Nor is *Fairmount Film Corp.* v. *New Amsterdam Casualty Co.* (189 App. Div. 246) controlling. As pointed out in the opinion in that case, the " real point in the case " was the ruling that the statutory prohibition related to contracts of foreign corporations negotiated on consent and not to contracts arising by operation of law as was the case with the attachment undertaking there considered. Moreover, it is clear from the opinion that the court did not expressly consider the effect of the amendments of 1917.

In *Howden & Co., Inc.,* v. *American C. & E. Corp.* (194 App. Div. 164) this court said: " The purpose of the amendment, therefore, by the insertion of these words would seem clearly intended to prohibit the recovery of a judgment in an action which had been lawfully brought prior to the expiration of the thirteen months, if after the expiration of such time the tax were not paid. The general policy of the law is apparent to forbid an appeal to the courts in an affirmative action by any foreign corporation which has not obtained a certificate of authority as prescribed by section 15 of the General Corporation Law or which, after thirteen months, has not paid the tax as provided by section 181 of the Tax Law."

In *International Text Book Co.* v. *Tone* (220 N. Y. 313 [1917]) the court said: " Section 181 of the Tax Law prohibits an action of any kind by a foreign corporation unless within a stated period after beginning business within the State, the prescribed license tax is paid."

In our opinion the surrogate correctly ruled that as against this appellant, a defaulter for over nine years in the payment of this license fee, the Legislature has properly imposed a penalty, namely, a bar to access to our courts for affirmative relief. It is the duty of the courts to make the penalty effective.

The order and decree so far as appealed from should be affirmed, with costs.

MARTIN, P. J., and TOWNLEY, J., concur; GLENNON and UNTERMYER, JJ., dissent* and vote for reversal.

MARTIN, P. J. (*concurring for affirmance*). The duty to arrange for the payment of the taxes rests upon the foreign corporation. A foreign corporation may be doing business in this State for years without the knowledge of the State Tax Commission and without the payment of any taxes. How can the Commission fix the taxes if it is without knowledge of the fact that the foreign corporation is doing business in this State? The statute provides no action shall be maintained by a foreign corporation where it has failed to pay the taxes. It should not be permitted to escape payment of all taxes until it finds it necessary to bring an action and then avoid the effect of the statute by asserting that the tax was not fixed by the Commission.

UNTERMYER, J. (*dissenting*). The surrogate has decided that Trinity Securities Company, the appellant, has a valid claim against the estate of Edwin King Scheftel, deceased, for the sum of $20,000, with interest, the unpaid balance of a subscription for its stock by the deceased, but that this proceeding to enforce the claim cannot be maintained on account of non-payment of the license tax of sixty dollars imposed by section 181 of the Tax Law. It was not alleged by the executors, nor does the record suggest, that the amount of the tax had been determined by the State Tax Commission or that any assessment of the tax was made or any notice of assessment given. As a foreign corporation all of whose property within the State consisted of bank accounts, stocks, bonds, furniture and fixtures, the claimant was not subject to any tax imposed by section 182 of the Tax Law either as that section existed in 1925 or as amended in 1930 (Laws of 1930, chap. 663).

Section 181 of the Tax Law, so far as material, provides that " Every foreign corporation * * * doing business in this State, shall pay for the use of the State, a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this State, to be computed upon the basis of the capital stock employed by it within this State, during the first year of carrying on its business in this State; * * *. The measure of the amount of capital stock employed in this State shall be such a portion of the issued capital stock as the gross assets employed in any business within this State bear to the gross assets wherever employed in business. On the issued capital stock of any corporation issuing shares without designated monetary value such

corporation shall pay for the use of the State a license fee of six cents on each such share employed in this State, as hereinbefore provided. For purposes of taxation, the capital of a corporation invested in the stock of another corporation shall be deemed to be assets located where the physical property represented by such stock is located. The amount of capital upon which such license fees shall be paid shall be fixed by the State Tax Commission, which shall have the same authority to examine the books and records in this State of such foreign corporations, and the employees thereof as it has in the case of domestic corporations, and the State Tax Commission shall have the same power to issue a warrant for the collection of such license fees, as now exists with regard to domestic corporations. No action shall be maintained or recovery had in any of the courts in this State by such foreign corporation after thirteen months from the time of beginning such business within the State, without obtaining a receipt for the payment of the license fee upon the capital stock employed by it within this State during the first year of carrying on its business in this State."

Although section 181 provides that the amount of capital on which the license fee shall be paid is to be determined by the Tax Commission, there are no provisions requiring a foreign corporation to file any report for that purpose. Neither section 192, which provides for reports by corporations liable to the tax imposed by section 182, nor section 193, which requires certain corporations to appraise their stock, contains any reference to reports by foreign corporations liable to pay the tax imposed by section 181. It is not important whether this omission was inadvertent or intentional, for in neither event are we at liberty by judicial construction to extend the statute to include requirements which it does not contain (*Iselin* v. *United States*, 270 U. S. 245; *Wallace* v. *Cutten*, 298 id. 229; *Matter of Erikson* v. *Cohen*, 243 App. Div. 1; 59 C. J. 953), especially where it imposes such a drastic disability. Indeed, it is a cardinal principle of the law of taxation that such statutes must be construed strictly against the government and in favor of the taxpayer. (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51; *Matter of Gates*, 243 id. 193.) In the case of a foreign corporation, therefore, the statute does not require the corporation to tax itself nor to initiate any proceeding under section 181 to make known to the Tax Commission its presence within the State, but the Commission must ascertain that fact from any available source. This is by no means a novelty in methods of taxation. Apparently, however, to facilitate the work of the Commission, the Secretary of State is directed to furnish to the Commission a report

of all " foreign stock corporations to whom a certificate of authority has been issued to do business in this State " (§ 204). And see Tax Law (§ 202).

After the State Tax Commission has determined the tax, the amount of which must in most instances be difficult of accurate calculation since capital invested in the stock of another corporation is " deemed to be assets located where the physical property represented by such stock is located," the Commission is required by section 196 to " forthwith send notice thereof in writing to the person, partnership, company, association or corporation against whom the same is made." Not until thirty days thereafter is the corporation subject to any " penalty " on account of non-payment of the tax, for section 197 provides that " A tax or fee imposed by section one hundred eighty-one of this chapter shall be due and payable immediately after the close of the first year of carrying on business in this State, and without interest or penalty if paid within thirty days after notice of such tax or fee has been given, as provided in section one hundred ninety-six of this chapter." After the amount of the tax has been computed by the Commission, it may, upon application of a party aggrieved, entertain a proceeding for revision (Tax Law, § 198), in which event it must again give written notice of its determination. Certiorari proceedings " to review any audit and statement of an account * * * or any determination by the Tax Commission " must then, under section 200, be instituted within ninety days " after the service of the notice of such determination." A warrant for the collection of the tax may issue " After the expiration of thirty days from the sending by the Tax Commission of a notice of a statement of an account " of taxes due. (Tax Law, § 201.)

It is manifest, therefore, that until the Commission has fixed the amount of the tax to be paid by the foreign corporation, and until the expiration of thirty days after notice of the amount determined to be due, no " interest or penalty " is imposed. It was so decided by the Court of Appeals in *Halsey* v. *Jewett Dramatic Co.* (190 N. Y. 231), by this court in *Fairmount Film Corp.* v. *New Amsterdam Casualty Co.* (189 App. Div. 246), and by CRANE, J., in *Seibert* v. *Dunn* (70 Misc. 422). In *Halsey* v. *Jewett Dramatic Co.* (*supra*) it was held that an answer which alleged non-compliance with section 181 of the Tax Law (then chapter 240 of the Laws of 1895) as a defense was insufficient where it failed also to allege that the Comptroller had fixed the amount of the tax. Said the court: " Under the statute [Laws of 1895, chap. 240] to which we have alluded it becomes the duty of the Comptroller to fix the

amount and then it must be paid within thirty days thereafter. It will be observed that the defendant has failed to allege, either in its amended or supplemental answer, that the amount of the license fee had been assessed by the Comptroller and that more than thirty days had elapsed before the fee was paid on July 3rd, 1902. I am, therefore, of the opinion that the defense interposed was insufficient in law and that the demurrer should have been sustained." It is no answer to say that this decision was upon pleadings only and not after final judgment. Questions of law can be as readily decided, and quite as authoritatively, on pleadings as in any other way. In *Fairmount Film Corp.* v. *New Amsterdam Casualty Co.* (*supra*) this court expressed the same opinion concerning section 181, as amended by the Laws of 1917 (Chap. 490), saying: " The amount of capital upon which the license fee is required to be paid must be fixed by the State Tax Commission as prescribed in said section. It is manifest, therefore, that the license fee is not payable until the amount thereof has been fixed by the State Tax Commission." Likewise, in *Seibert* v. *Dunn* (*supra*), CRANE, J., said: " There is no evidence or allegation that the Comptroller ever fixed the tax, and it is quite evident that foreign corporations were not intended to tax themselves. No tax being computed, no tax was due; and the prohibitions of section 181 do not apply to this case."

The surrogate was of opinion that the amendment of 1910 (Laws of 1910, chap. 340), enacted after the decision in *Halsey* v. *Jewett Dramatic Co.* (*supra*), though previous to the decisions in *Fairmount Film Corp.* v. *New Amsterdam Casualty Co.* (*supra*) and *Seibert* v. *Dunn* (*supra*), had introduced a change in this respect. We are, however, clearly of the opinion that the amendment of 1910 effected no such change. Indeed, the respondents' contention now is that the amendment of 1917 (Laws of 1917, chap. 490), which extended the application of section 181 from foreign corporations " authorized to do business under the General Corporation Law" to foreign corporations " doing business in this State," justifies the interpretation which has been placed upon the statute. However, since that amendment left undisturbed the provisions of section 181 which require the State Tax Commission to fix the amount of the tax and the other provisions of the Tax Law requiring notice to be given, we cannot attribute any force to that contention. The amendment of 1917 was enacted in May of that year for a limited and for a very different purpose. It was intended to rectify the situation created by the decision of the Court of Appeals in March, 1917, in *International Text Book Co.* v. *Tone* (220 N. Y. 313) and by our decisions in *Port-*

*land Co.* v. *Hall & Grant Construction Co.* (121 App. Div. 779), and *Hoevel Sandblast Machine Co.* v. *Hoevel* (167 id. 548), wherein it was held that the statute as it then existed imposed no tax on foreign corporations conducting business in this State *without a certificate of authority.* (Compare the subsequent decision in *People* v. *Tropical Fruit Corp.,* 223 App. Div. 864; affd., 252 N. Y. 605.) In thus extending the statute to include corporations not authorized to do business in this State, the Legislature no doubt increased the difficulty of assessment and the collection of the tax. But the method of assessment was not changed at all. We are now asked to supply that alleged omission by judicial legislation. This we are not at liberty to do. (*Matter of Second Avenue M. E. Church,* 66 N. Y. 395; *McKuskie* v. *Hendrickson,* 128 id. 555; *Johnson* v. *Hudson River R. R. Co,* 49 id. 455; *McCluskey* v. *Cromwell,* 11 id. 593.) We regard this question, moreover, as settled by the decision of the Court of Appeals in 1924, after all the amendments on which the respondents rely, in *International Petroleum Co.* v. *Mexican Sinclair Petroleum Co.* (238 N. Y. 554), which, though decided without opinion, is shown by the record on appeal and the briefs of counsel to have presented the same issue as the present case. There, the Special Term in dismissing the second defense had erroneously held (apparently overlooking the amendment of 1917) that since the plaintiff had not procured a certificate of authority to do business in this State, the provisions of section 181 did not apply. In the Court of Appeals, however, the plaintiff's only contention, sustained by that court, was that, notwithstanding the amendment of 1917, section 181 did not apply unless there had been an assessment of the tax by the Commission. In affirming the judgment, that contention must have been sustained by the Court of Appeals. In such a situation, where the consequences to the taxpayer are so serious, the rule of *stare decisis* should be scrupulously observed and no idea of deviating from previous decisions should, even for a moment, be entertained.

We think it is significant also that after the decision by the Court of Appeals in *Halsey* v. *Jewett Dramatic Co.* (*supra*), of which the Legislature is presumed to have been cognizant (*Kent* v. *Jamestown Street R. Co.,* 205 N. Y. 361; *Cashmore* v. *Peerless Motor Car Co.,* 154 App. Div. 814), it refrained from any change definitely evincing a purpose to abrogate the rule expressed in that decision either by repealing those provisions of section 181 which require the Commission to fix the tax or by inserting provisions requiring foreign corporations to initiate proceedings to that end. We attach no significance to the statement contained in the report of the Board

of Statutory Consolidation in 1907, to which reference is made in the prevailing opinion. The only purpose of this was to indicate the reasons for including the provisions of chapter 240 of the Laws of 1895 requiring the State Tax Commission to fix the amount of the tax in the Tax Law from which it had been inadvertently omitted. Indeed, if the re-enactment of that provision as a part of the Tax Law may be said to furnish any indication of intention, it is that the Legislature regarded that provision as previously construed in *Halsey* v. *Jewett Dramatic Co.* (*supra*) as proper to be retained. (*People ex rel. Outwater* v. *Green*, 56 N. Y. 466; *People* v. *Richards*, 108 id. 137; *Pouch* v. *Prudential Ins. Co.*, 204 id. 281.)

It is evident upon all these considerations that determination of the tax by the Commission and notice to the taxpayer is fundamental in the administration of the law in so far at least as foreign corporations are concerned. Without it such a corporation, whose tax depends upon the amount of capital employed within the State, ordinarily cannot know with accuracy the extent of its tax liability. Yet, if the construction which has been placed on the statute is correct, it would be deprived of the right to maintain an action here whenever it could be shown that it had paid less than the full amount of the tax imposed by section 181, however difficult of calculation it might be. For that reason no doubt the Legislature was careful to provide for assessment by the Commission, notice to the taxpayer and opportunity to contest the amount of the tax. Only in this way could certainty be attained and injustice avoided both to the taxpayer and the State.

The decree so far as appealed from should be reversed, with costs, and a decree should be entered in favor of the claimant for the sum of $20,000, with interest.

GLENNON, J., concurs.

Order and decree, so far as appealed from, affirmed, with costs.